**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Evans HARP, Edwin R. Breaux, Jean Orsini, Willard Joseph Martin, Don Garriga Chapman, and Elvin Edsel Haddock, Defendants-Appellants.**

**No. 74–1810.**

United States Court of Appeals, Fifth Circuit.

May 30, 1975.

Rehearing and Rehearing En Banc Denied July 8, 1975.

Eric Welch, Atlanta, Ga. (Court appointed), for Harp.

Bobby Joe Harrelson, pro se.

Dennis M. Hall, Decatur, Ga. (Court appointed), for Breaux.

Fred Filsoof, Atlanta, Ga. (Court appointed), for Orsini.

Marvin S. Soskin, Atlanta, Ga. (Court appointed), for Martin.

Roman A. DeVille, Atlanta, Ga. (Court appointed), for Haddock.

Bruce L. Whitmer, Atlanta, Ga. (Court appointed), for Chapman.

John W. Stokes, U. S. Atty., Stanley M. Baum, J. Robert Cooper, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The right to remain silent and the use of that silence for impeachment of inconsistent trial testimony are not necessarily antithetic or mutually exclusive values. Appellants were tried for and convicted of attempted escape. Proof of and prosecutorial comment on the failure of the appellants from the time of apprehension to the time of trial, to apprise any official that all but one claimed to have been kidnapped by that one was permissible.

On March 9, 1973, an inspector at the United States Penitentiary in Atlanta, Georgia, was making his final inspection of a railroad boxcar about to exit the sally port in the prison wall when his suspicion was aroused by scratches and markings on the underside of the car. He ordered it back to the loading dock for inspection. When the doors were opened and personnel began unloading the car's cargo of mattresses packed in

cardboard boxes, ten men,[1] including appellants, came out from an opening in the bottomside of the car. A penitentiary officer crawled into the opening and discovered that several of the cardboard cartons on the bottom of the car had been stacked initially to form an igloo-like space over the hole. In the igloo, he found a hand saw and other saw devices, two chisels, two pocket knives, three handmade knives, a hammer, a hand drill, two flashlights, two one-dollar bills, clothing, and two remarkably authentic-looking hand guns made of wood.

At the trial for attempted escape in violation of 18 U.S.C. § 751(a), defendants Harrelson, Orsini and Chapman testified that only Chapman intended to escape.[2] Their collective story was that he alone arranged the mattress boxes to form the den at the inception of the boxcar's loading and he alone cut the access way in the car's bottomside. When Chapman returned to enter his hiding place just prior to the car's departure from the sidetrack loading dock, he found that the other inmate defendants had secreted themselves under the boxcars in the loading dock pit to drink some illegally brewed beer. Chapman, hearing the switch engine approaching, fearing his escape plan was about to be thwarted, and realizing that he had built a hideaway large enough for the whole group, brandished the real-looking wooden hand guns, and forced those present to precede him into the boxcar so that they couldn't reveal his plan. Two testifying "kidnap victims" claim that all victims entered the boxcar because they thought Chapman, known to be a violently unstable man, would shoot them if they didn't. In his testimony Chapman supported the kidnapping story but contended he was insane.[3]

The various arguments of the individual appellants present a number of overlapping points: Harp, Haddock, Martin, Orsini, and Chapman, individually and variously, argue that the evidence was largely circumstantial and such evidence was insufficient to prove their guilt beyond a reasonable doubt, especially as to the elements of wilfulness and intent; appellants Breaux and Harp assign as error inadequate proof as to the chain of custody and condition of the items assertedly discovered inside the boxcar, which were admitted as government exhibits; Harp argues that the trial subjected him to double jeopardy since he had received administrative punishment at the hands of prison administrators for the same conduct; Haddock urges that the court abused its discretion in admitting, for impeachment purposes, the number and types of convictions of the defendant prisoners and their fellow prisoner witnesses; Chapman complains that the government failed to prove his sanity at the time of the attempt, that he received ineffective assistance of counsel because his trial counsel failed to pursue the insanity defense until it was too late, and that the court erroneously failed to grant him a new trial on his own pro se motion; and Harp, Haddock, and Orsini complain that their constitutional right to remain silent was violated by the prosecutor's closing argument comments on the defendants' failure to ever assert their innocence at any time between arrest and trial. In the context of this case, all of these contentions, save the last, are frivolous.

---

1. Each of the ten was individually named in a separate count of a ten-count indictment. Only six remain before the court on this appeal. The count against one defendant met with a declaration of mistrial; a second with a directed verdict of acquittal; and a third with a jury verdict of not guilty. The jury returned verdicts of guilty on the remaining counts against the other seven defendants, and all those convicted appealed. The appeal of one, Bobby Joe Harrelson, was dismissed for want of prosecution.

2. Only these three of the defendants took the stand. (The appeal of Harrelson was dismissed. *See* n. 1.) Other defense testimony was elicited from non-defendant inmates of the penitentiary.

3. The issue of Chapman's sanity has been before this court in a previous unrelated matter. *See* Chapman v. United States, 472 F.2d 117 (5th Cir. 1973).

The point which warrants discussion is the claim of error in the prosecutor's closing comments on the inconsistency between the we-were-kidnapped defense and the failure of any defendant to even mention this condition to any official prior to trial.[4] Harp and Haddock, who did not testify, and Orsini, who did, argue that the trial court committed plain error in failing to grant a mistrial or severance because such comments constituted a breach of their Fifth Amendment right to remain silent. Haddock further asserts that since the proof against him was largely circumstantial, the right infringed constitutional, and the evidence not overwhelming, the error was not harmless beyond a reasonable doubt.

The government responds that its proof and comments—that no one involved mentioned kidnapping prior to trial—were permissibly directed at the impeachment of those defendants, Harrelson, Orsini and Chapman, who took the stand.

In this respect the government's position is correct. A defendant who elects to take the stand to explain his presence at, or participation in, the asserted criminal conduct, subjects that testimony to the impeaching effect of proof of a prior inconsistent action. McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). Such impeachment may include proof of silence or a failure to disclose prior to trial the presently asserted explanation, where such silence or failure is clearly inconsistent with the explanation tendered. See Raffel v. United States, 271 U.S. 494, 496–497, 46 S.Ct. 566, 567–568, 70 L.Ed. 1054 (1926).

In striking the balance between protecting the self-incrimination bar of the Fifth Amendment and allowing a full testing of the truth of trial testimony, this circuit has opted for a rule which reconciles both values without allowing either to exclude the other. In United States v. Ramirez, 441 F.2d 950 (5th Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113, reh. den., 404 U.S. 987, 92 S.Ct. 445, 30 L.Ed.2d 371 (1971), and United States v. Quintana-Gomez, 488 F.2d 1246 (5th Cir. 1974), we interpreted the rule of Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971),[5] in a manner which would permit the use of defendants' silence to impeach Harrelson, Orsini and Chapman, who testified. The Third Circuit has adopted the same view. United States ex rel. Burt v. State of New Jersey, 475 F.2d 234 (3d Cir.), cert. denied, 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973) (Douglas, Brennan, and Marshall, JJ., dissenting.)[6]

The right to remain silent is a safeguard against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), teach that prosecutorial comment on the exer-

4. Shortly after saying that if the jury believed the duress defense then its "feeling about Santa Claus and Easter Bunny and the Good Fairy and all that . . . [would be] equally acceptable," the prosecutor stated:

Now doesn't it make sense that if the facts had been like the defendants said they had been, that they would have told somebody?
"Warden Henderson, I had no part of this. I was forced in a boxcar by Mr. Chapman," and don't you know right down the list that they would have gotten together and said, "Warden, we didn't have anything to do with that; Mr. Henry, F.B.I. man, I had nothing to do with that. Don't prosecute me for this. I was frightened slap to death by this man Chapman."
Did that happen? No, it didn't happen.

Don't you know that anywhere along the line, these people could have gotten somebody at the prison and said,
"Look, don't prosecute me for this, I was forced up in the box car."
Did that happen? No, it didn't happen.
When was the first time that any of that was talked about? Right in this courtroom. Right in this courtroom is when that was first talked about.

5. Recently elaborated in Oregon v. Hass, —— U.S. ——, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) [No. 73–1452, March 19, 1975].

6. Cf., United States ex rel. Macon v. Yeager, 476 F.2d 613 (3d Cir. 1973), which held that a telephone call to counsel could not be the subject of prosecutorial comment.

cise of this right violates the Constitution. However, when a defendant sponsors a defense at trial to the accusation laid against him, which common sense and good reason assert is totally inconsistent with pretrial silence of the testifying defendant or his witness, the pursuit of truth may allow penetration of what is otherwise shielded, to test the credibility of the defense he offers.[7]

We are aware that the District of Columbia and Tenth Circuits have adopted a contrary rule. United States v. Anderson, 162 U.S.App.D.C. 305, 498 F.2d 1038 (1974); Johnson v. Patterson, 10 Cir., 475 F.2d 1066, cert. denied, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973).[8] However, the words of Judge Breitenstein, dissenting in *Johnson,* epitomize the reasoning which supports our different view:

> My position is that when a defendant testifies he may be impeached like any other witness. The use of pre-trial silence for impeachment depends on whether, in the circumstances presented, there is such inconsistency between silence and testimony as to reasonably permit the use of silence for credibility impeachment.

475 F.2d at 1070.

Because this prosecutorial tactic makes collateral use of a constitutionally protected right, it is subject to strict scrutiny. However, in the bright, cool light of appellate hindsight this was a case in which its use was reasonably permissible. Accepting the proof in a light most favorable to conviction, as we must on our review, the jury could have found that a group escape plan was foiled by an alert guard. This elaborate escape attempt from a maximum security penitentiary required planning and execution over a long period of time in areas which were frequented by numerous prisoners. The government proved, in capsule, that several men were apprehended as they were about to ride their boxcar version of a Trojan horse through the walls of the prison. The combination kidnap-insanity defense was ingenious, but patently absurd.

■ Pragmatically, we recognize that an aura of guilt is popularly associated with an accused's exercise of the right to remain silent. Therefore, this cautionary note is apropos: it is the rare and exceptional case where comment on silence is permissible. Total inconsistency is the criterion. If any rational explanation for the defendant's invocation of his Fifth Amendment privilege exists, the prosecution's impeachment use of a failure to speak would be error. This safeguard assures that collateral use is for the purpose of impeaching matter the defendant has put in dispute, and not for subtly encouraging a jury to infer guilt from silence. In the peculiar circumstances of this case, the prosecutor's comment which called to the jury's attention that sound reason and common sense indicated that the testimony offered was totally inconsistent with the witnesses' prior conduct was not error.

The jury in this case decided that truth was not always stranger than fiction. The evidence here provided more than ample support for that conclusion. The convictions appealed from are

Affirmed.

---

**7.** Here, the record discloses no possible rational explanation for defendants' failure to speak, such as the advice of counsel or a hazard of divulging contradictory or incriminating facts. *See, e. g.,* Grunewald v. United States, 353 U.S. 391, 422, 77 S.Ct. 963, 983, 1 L.Ed.2d 931 (1957). Furthermore, it was not shown that defendants lacked an appropriate opportunity to make their "kidnapped" condition known, nor did the prosecutor comment on any pretrial conduct by defendants except their failure to assert that they had been forced to accompany Chapman. *Cf.* United States ex rel. Macon v. Yeager, *supra,* n. 6.

**8.** Prior to *Harris* several other circuits, including our own, prohibited such a procedure. United States v. Arnold, 425 F.2d 204 (10th Cir. 1970); United States v. Semensohn, 421 F.2d 1206, 1209–1210 (2d Cir. 1970); United States v. Nolan, 416 F.2d 588 (10th Cir. 1969); United States v. Brinson, 411 F.2d 1057 (6th Cir. 1969); Fowle v. United States, 410 F.2d 48 (9th Cir. 1969); Baker v. United States, 357 F.2d 11 (5th Cir. 1966); Fagundes v. United States, 340 F.2d 673, 676–677 (1st Cir. 1965); Helton v. United States, 221 F.2d 338 (5th Cir. 1955). *But see,* Sharp v. United States, 410 F.2d 969 (5th Cir. 1969) and United States v. Pledger, 409 F.2d 1335 (5th Cir. 1969).