STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JAMES A. DEATORE AND DAVID J. MALLON, DEFENDANTS-RESPONDENTS.

Reargued September 23, 1975—Decided April 13, 1976.

*Mr. Richard W. Berg,* Deputy Attorney General, argued the cause for plaintiff-appellant (*Mr. William F. Hyland,*

Attorney General of New Jersey, attorney; *Mr. Berg,* of counsel and on the brief).

*Mr. Philip S. Elberg,* designated attorney, argued the cause for defendant-respondent James A. Deatore (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Elberg,* of counsel and on the brief).

*Mr. Alexander F. McGimpsey* argued the cause for defendant-respondent David J. Mallon (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Messrs. Orlando & McGimpsey,* designated attorneys, *Mr. Stephen Orlando, Jr.,* of counsel and on the brief).

The opinion of the Court was delivered by

HUGHES, C. J. Having been tried jointly to a jury, defendants were convicted of armed robbery (*N. J. S. A.* 2A:141–1, *N. J. S. A.* 2A:151–5) of a store proprietor and a customer present in the store at the time. The Appellate Division reversed the convictions in separate unreported decisions, and we granted certification on petitions of the State. 63 *N. J.* 425 and 502 (1973).[1]

The appeals were argued in due course but we delayed decision in view of the pendency of a somewhat comparable case in which the United States Supreme Court issued its opinion on June 23, 1975. (*United States v. Hale,* 422 *U. S.* 171, 95 *S. Ct.* 2133, 45 *L. Ed.* 2d 99). Counsel were invited to file supplemental briefs bearing on the significance (or otherwise) of *Hale,* and the appeals were then reargued.

The facts here are these: at the trial Deatore defended on the basis of alibi, asserting that at the time of the crime he was in the company of a woman in a motel room in the

---

[1]Since such reversals defendants have remained imprisoned under sentences imposed on other unrelated convictions, the maxima of which will be reached in 1980, less commutation credits to be earned under statute (*N. J. S. A.* 30:4–92, *N. J. S. A.* 30:4–140).

area. This evidence was presented through his own testimony and that of the alleged female companion. Mallon neither took the stand nor offered evidence in his defense. The proof of guilt of both defendants was overwhelming not only through identification by the victims but also by reason of much incriminating evidence, especially checks and credit and personal cards of the victims, found on a search, pursuant to a warrant, of the motel rooms occupied by defendants.

The Appellate Division reversed Deatore's conviction because the trial judge permitted the prosecution to ask him on cross-examination, over objection, a series of questions bearing on his failure to make any exculpatory statement to the police after he was arrested. Mallon's conviction was reversed because the court felt that "the nature of the error was such as to affect and prejudice Mallon as well as Deatore in the light of surrounding circumstances," although this ground had not been urged in Mallon's brief on appeal.

In its opinion in Deatore's case the Appellate Division discussed another issue. After the jury box had been filled the judge had asked the prospective jurors whether they knew counsel, the defendants or any of the State's proposed witnesses. One answered that she knew the customer-victim of the holdup "personally and business." The judge then inquired whether, in view of this acquaintanceship, she could "render a verdict that would be free of any partiality or any prejudice * * *." She replied that she could. At the conclusion of the court's *voir dire* examination[2] and before any peremptory challenges under *R.* 1:8-3(d) were exercised,[3] counsel for Deatore, at side bar, moved to dismiss the juror

---

[2]An obligation primarily cast upon the trial judge by reason of the amendment of *R.* 1:8-3(a) ; *see State v. Manley*, 54 *N. J.* 259 (1969).

[3]*R.* 1:8-3(d) : "* * * the defendant shall be entitled to 20 peremptory challenges if tried alone and to 10 such challenges when tried jointly; * * *"

for cause. When this was refused, he asked leave to examine her on the extent of her relationship with the victim, knowledge of the crime committed against him and the like, which request was also summarily denied. Counsel then exercised a peremptory challenge and excused the juror. The matter of possible bias came up again during a *voir dire* examination by the court after all defense peremptory challenges had been exhausted. Deatore's attorney suggested the potential partiality of a juror who mentioned two relatives by marriage employed as correction officers in a Pennsylvania state prison. He asked for an additional peremptory challenge by reason of the claimed erroneous denial of the challenge of the earlier juror for cause. This was likewise refused. Mallon's counsel joined in each of these motions.

 Having in mind the basic right of every defendant to a fair and impartial trial, we have no doubt that the trial court committed fundamental error in its refusal to conduct or permit a further examination of the first juror in the circumstances, which error in itself requires reversal of the judgments of conviction of both defendants and remand for a new trial, and so affirmance of the Appellate Division in both cases (the point was not mentioned in the *Mallon* opinion although it was the principal ground of appeal urged). We adopt the language of the Appellate Division in *Deatore* spelling out the reason:

Once it was disclosed by [the juror] that she was acquainted with one of the robbery victims, it became the duty of the trial judge to himself explore or to permit counsel to explore with the juror the nature and extent of his acquaintance with the victim. Without such information, neither counsel nor the court could make an intelligent appraisal as to the likelihood of the existence of any bias, prejudice or partiality in favor of the State or in favor of the credibility of the victim. *State v. Jackson*, 43 *N. J.* 148, 157–161 (1964), *cert.* den., 379 *U. S.* 982 [85 *S. Ct.* 690, 13 *L. Ed.* 2d 572] (1965). Had such inquiry been made and revealed a close relationship, it is not enough that the juror disclaimed any partiality for, as the court observed in *Jackson*, sincere as the disclaimer may be "it runs counter to human nature," *Id.*, at page 160. * * *

Jurors "must be [carefully] selected with an eye toward[s] their ability to determine the controverted issues fairly and impartially;

. . . [and] the trial court should see to it that the jury is as nearly impartial 'as the lot of humanity will admit.' " *Jackson*, at pages 157–158. Likely prejudice to the right of this defendant to a fair and impartial trial inhered in the failure of the trial court to heed this elementary principle. *Wright v. Bernstein*, 23 *N. J.* 284 (1957).

The sufficiency of a stated disclaimer of any partiality in circumstances such as here involved would not only seem to run " 'counter to human nature' " as above, but to fly "in the face of the plain reality of the courtroom." *Cf. State v. Miller*, 67 *N. J.* 229, 245 (1975) (Clifford, J., concurring and dissenting in part). *See also* Annotation, "Social or business relationship between proposed juror and non-party witness affecting former's qualification as juror," 11 *A. L. R.* 3d 859 (1967).

█ We add that the obvious and practical way to handle the situation of a prospective juror having connections with a party or witness which might possibly affect impartiality is to excuse the juror by consent at the outset, with that course suggested by the judge if counsel do not propose it. And if that arrangement is rejected, the trial judge should proceed with the supplemental interrogation above mentioned, or permit counsel to do so in his discretion, to test the legitimacy or necessity of excusal for cause.

█ Although both cases could be disposed of on the basis of this error, we note the vigorous contention of the State that its cross-examination of Deatore was proper and that the Appellate Division was wrong in reversing his conviction on that ground. Since the point raised is of general importance, is subject (as we shall note later) to a remarkable variance in judicial views, and should be settled so far as New Jersey courts are concerned, we will decide it on the merits; this, even though it might be said that the evidence of guilt was so strong that any trial error in this regard was harmless beyond a reasonable doubt. We should further say that we disagree with the Appellate Division's holding that the asserted error in the questioning of Deatore necessarily "rubbed

off" on Mallon and prejudiced him as well so as to require the reversal of his conviction on that ground. Our opposite view is based upon the overwhelming evidence of guilt on the part of Mallon, apart from and irrespective of silence or other conduct on the part of Deatore, rendering any possible effect on Mallon of the State's challenge of Deatore's silence, harmless error beyond a reasonable doubt. *Compare State v. Davis,* 67 *N. J.* 222, 228 (1975) *with State v. Macon,* 57 *N. J.* 325, 335–41 (1971). In this respect we distinguish the exposure of both defendants equally to prejudice resulting from the failure to probe the qualification of the first challenged juror to sit in impartial judgment.

As indicated, the questions involved here related to the matter of Deatore's silence and failure to voice exculpatory information to the police at or about the time of his arrest. These questions came in the course of cross-examination, after he had testified on direct that he was elsewhere at the time of the crime. He was asked whether he had made any statements to such effect to the police when he was arrested and later when he learned of the specific charge against him. His reply was that the only thing he remembered saying was that he wanted a receipt for the money taken by the police from his person. He denied that he told the police he had nothing to say, and the interrogation concluded with the prosecutor asking whether it was not so that he had refused to make any statement.[4] The answer was: "Nobody asked me." It may be added that while there was testimony by one of the arresting officers that "defendant was read his rights" at police headquarters (which we interpret to mean that he was given the *Miranda* warning; *Miranda v. Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966)), there was no evidence that he was questioned at all. No rebuttal testimony was offered by the State with respect to the line of interrogation outlined above, and no mention was

---

[4]There is an obvious stenographic mistake in the trial transcript at this point. We have treated it as if corrected.

made of it during the balance of the trial either in the State's summation or otherwise.

The State takes the position that the purpose of its trial questioning was to elicit whether Deatore had an opportunity to assert his alibi defense at or about the time of arrest and, if so, to bring to the jury's attention that he had not asserted it until his testimony at the trial, which would have the effect of impeaching that testimony. The reasoning is, of course, that an innocent man would not have withheld such an exculpatory story prior to trial, but would have asserted it to someone in authority at the earliest opportunity to avoid arrest, indictment and trial; and that, therefore, the natural inference would follow that, unless a rational explanation for the failure to make such disclosure could be presented, the later exculpatory testimony is untrue.

Here the State also suggests that its cross-examination did not go to the full length of asking Deatore whether he had ever told anyone of his alibi claim prior to trial, because it developed that since no one asked him for a statement, he had no opportunity to tell the police of his alibi and that any error was therefore harmless since the impression left with the jury was entirely innocuous. While this may well be so, we pass the question in order to deal with the merits of the State's position to its full extent. This we understand to be that if a defendant, like Deatore, testifies exculpatorily at trial and had not told that story, but remained silent, at or near the time of his arrest, his silence and failure to volunteer then, whether or not he was questioned, may properly be brought to the attention of the jury on cross-examination in order to permit the inference that the exculpatory testimony is therefore untrue. We emphasize that this position goes beyond a situation where a defendant did make a statement at or near arrest, which is inconsistent with his trial testimony, or where conduct (as distinct from silence) at the time of the crime or thereafter is inconsistent with the story told at trial.

■ We are convinced that the State's position should not be adopted and that such cross-examination of a defendant is improper.

The Appellate Division reached that result on a federal constitutional basis, saying that questioning of this kind could not help but penalize a defendant for exercising his Fifth Amendment privilege against self-incrimination (by remaining silent), on the authority of *Miranda v. Arizona, supra,* 384 *U. S.* at 468, n. 37, 86 *S. Ct.* at 1624–25, 16 *L. Ed.* 2d at 720, and was as unfairly prejudicial as would be comment by the prosecutor on the failure of a defendant to testify in his own defense, forbidden by *Griffin v. California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed.* 2d 106 (1965).

Cases in other jurisdictions, both federal and state, have reached differing conclusions on this question as approached from a federal constitutional base (and otherwise); and because the decision in *United States v. Hale, supra,* rested on a different and non-constitutional ground,[5] there has been as yet no definitive decision of the United States Supreme Court, on the constitutional issue. A catalog of all the various cases would serve no useful purpose. We mention a few cases in the federal system as illustrative of the different results reached.

---

[5] In *Hale*, the Supreme Court held that respondent Hale's silence during police interrogation and failure then to offer an exculpatory statement, such as that later testified to at trial, lack a significant probative value, at least when weighed against the "intolerably prejudicial impact" which might result were a jury to attach more weight than warranted to such invited silence. The Court thought such silence to be particularly ambivalent and non-probative in view of possible reliance on the right to remain silent after hearing the Miranda warning, but mentioned also that a "variety of reasons" might "influence that decision" and that there might be "many alternative explanations for his pretrial silence." 422 *U. S.* at 176–80, 95 *S. Ct.* at 2136–38, 45 *L. Ed.* 2d at 104–07.

We are aware that the federal constitutional question is now pending before the United States Supreme Court in *Doyle v. Ohio,* No. 75–5014, and *Wood v. Ohio,* No. 75–5015, argued on February 23, 1976. *See* 18 *Crim. L. Rep.* 4184–86 (1976).

*United States v. Anderson,* 162 *U. S. App. D. C.* 305, 498 *F.* 2d 1038 (1974), *aff'd on other grounds sub nom. United States v. Hale, supra,* in which many of the federal cases are collected and discussed, held that such questioning of a defendant at trial was improper by reason of the prohibition laid down in footnote 37 in *Miranda v. Arizona, supra*:

In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.* [498 *F.* 2d at 1041 (quoting from *Miranda, supra,* 384 *U. S.* at 468, 86 *S. Ct.* at 1624–25, 16 *L. Ed.* 2d at 720) (emphasis by the court in *Anderson*)]

(Under this view, it is certainly an *a fortiori* situation when a defendant, like Deatore, was not subject to police interrogation, but his exculpatory trial testimony is sought to be impeached by his *failure to volunteer* that story when arrested.) Chief Judge Bazelon went on to hold that this interdiction in *Miranda* had not been undercut by *Harris v. New York,* 401 *U. S.* 222, 91 *S. Ct.* 643, 28 *L. Ed.* 2d 1 (1971), which held proper the use of prior inconsistent utterances to impeach a defendant's trial testimony even though the utterances were made before the defendant was adequately apprised of his rights and therefore would have been inadmissible on the prosecution's chief case by reason of that *Miranda* violation. *See also Oregon v. Hass,* 420 *U. S.* 714, 95 *S. Ct.* 1215, 43 *L. Ed.* 2d 570 (1975). He found nothing inconsistent with remaining silent at interrogation and offering exculpatory testimony at trial. 498 *F.* 2d at 1042–44.

The Court in *Hale* discussed and distinguished its decision in *Raffel v. United States,* 271 *U. S.* 494, 46 *S. Ct.* 566, 70 *L. Ed.* 1054 (1926),[6] considering the *Hale* fac-

---

[6] In *Raffel* the Supreme Court held that a defendant's testimony at a retrial could be impeached by cross-examination which disclosed that defendant, in the face of similar prosecution testimony, had chosen not to testify at his first trial, saying that "[h]is

tual pattern more closely parallel to that of *Grunewald v. United States,* 353 *U. S.* 391, 77 *S. Ct.* 963, 1 *L. Ed.* 2d 931 (1957).[7]

In *United States v. Harp,* 513 *F.* 2d 786 (5th Cir. 1975) defendants had contended at their trial for attempted escape that one Chapman had kidnapped them and forced them to enter a railroad car in an attempt to escape from the penitentiary. The prosecutor in his closing argument commented on the inconsistency between this "kidnapping" story and the failure of any defendant to even mention this bizarre fact to any official prior to trial. The court rejected the contention that the comment infringed on their Fifth Amendment right to remain silent, stating:

\* \* \* when a defendant sponsors a defense at trial to the accusation laid against him, which common sense and good reason assert is totally inconsistent with pretrial silence of the testifying defendant or his witness, the pursuit of truth may allow penetration of what is otherwise shielded, to test the credibility of the defense he offers. [*Id.* at 790 (footnote omitted)]

The court further cautioned in *Harp* that "[b]ecause this prosecutorial tactic makes collateral use of a constitutionally protected right, it is subject to strict scrutiny." It premises admissibility of such evidence upon the following conditions:

\* \* \* it is the rare and exceptional case where comment on silence is permissible. Total inconsistency is the criterion. If any rational explanation for the defendant's invocation of his Fifth Amendment privilege exists, the prosecution's impeachment use of a failure to speak would be error. This safeguard assures that collateral use

---

waiver is not partial; having once cast aside the cloak of immunity he may not resume it at will." 271 *U. S.* at 497, 46 *S. Ct.* at 568, 70 *L. Ed.* at 1058.

[7]In *Grunewald* the Supreme Court held that it was error to permit cross-examination of a defendant testifying at his trial as to his previous refusal to testify to such effect, or at all, before the grand jury which indicted him. It perceived the problem as a question of the probative value of such evidence, as was the basis of its later decision in *Hale.* 353 *U. S.* at 419–23, 77 *S. Ct.* 981–83, 1 *L. Ed.* 2d at 951–54.

is for the purpose of impeaching matter the defendant has put in dispute, and not for subtly encouraging a jury to infer guilt from silence. [*Id.* at 790]

Not only have the federal Circuit Courts differed among themselves in their approach to this problem, but on occasion all members of the same court have exhibited such differences. *See, e. g., Agnellino v. New Jersey,* 493 *F.* 2d 714 (3d Cir. 1974).

*United States v. Ramirez,* 441 *F.* 2d 950 (5th Cir.), *cert.* den., 404 *U. S.* 869, 92 *S. Ct.* 91, 30 *L. Ed.* 2d 113 (1971) is frequently cited as the leader of the line of federal cases validating the testimony on the basis that silence at the time of arrest is an act inconsistent with the testimony given at trial. The court found an "inescapable" analogy to *Harris* and said that once the defendant elected to testify and assert a defense, "he became subject to the 'traditional truth-testing devices of the adversary process', including the right of the prosecution to show his prior inconsistent act of remaining silent at the time of his arrest." 441 *F.* 2d at 954.

The disarray in decisional treatment of this question, whether on a basis of constitutional right or not, is not confined to the federal jurisdiction. *See, e. g., State v. Bates,* 140 *Conn.* 326, 99 *A.* 2d 133 (Sup. Ct. Err. 1953) (silence inadmissible); *People v. Simmons,* 28 *Cal.* 2d 699, 172 *P.* 2d 18 (Sup. Ct. 1946) (silence admissible). In this context, since the ultimate fate of this type of cross-examination of a defendant remains so unsettled and since it has recently been arising quite frequently in criminal trials in our state courts, we feel it should be settled now as far as the courts of this state are concerned. As has been indicated, we are of the view that such questioning is improper. We reach that conclusion as a matter of state law and policy, as to which we may impose standards more strict than required by the federal Constitution, which standards will control regardless of the final outcome of the question in the federal sphere. *Oregon v. Hass, supra; Cooper v. California,* 386 *U. S.* 58, 62, 87 *S. Ct.* 788, 791, 17 *L. Ed.* 2d 730, 734 (1967); *State*

*v. Johnson,* 68 *N. J.* 349, 353 (1975); *Avant v. Clifford,* 67 *N. J.* 496, 520–21 (1975); *Rodriguez v. Rosenblatt,* 58 *N. J.* 281, 294–95 (1971).

 The reasons for the stated conclusion rest in two categories. The first derives from the privilege against self-incrimination which is enshrined in the common law;[8] the second from basic principles of evidence law. To the extent that the stated conclusion rests on the privilege against self-incrimination, this opinion speaks for a majority of the Court. To the extent that it rests upon principles of evidence law, it represents the views only of the writer and Justice Mountain.

 The right not to be compelled to incriminate one's self arises in New Jersey, not from the state Constitution (as it does in most other states) but as part of the common law, confirmed by statute enacted in 1855 (*L.* 1855, *c.* 236, § 4, p. 668) which later became *N. J. S. A.* 2A:81–5: "No witness shall be compelled to answer any question if the answer will expose him to a criminal prosecution or penalty or to a forfeiture of his estate." *In re Pillo,* 11 *N. J.* 8, 15–17 (1952); *State v. Fary,* 19 *N. J.* 431, 434–35 (1955). The modern statement of the privilege, not essentially different, as far as the present case is concerned, from the original

---

[8]The common law privilege against self-incrimination began to emerge in response to the abuses of the Star Chamber in Stuart England, and eventually it became well-entrenched in the criminal law of England. *See* 1 *Stephen, History of the Criminal Law of England* 440 (1883). *Compare Trial of John Lilburn and John Wharton,* 3 *How. St. Tr.* 1315, 1326–27 (1637) *with Trial of John Lilburne,* 4 *How. St. Tr.* 1270, 1292–93 (1649) *and Trial of William Penn and William Mead,* 6 *How. St. Tr.* 951, 957–58 (1670). The English tradition was carried over to the American colonies where the privilege was exalted to constitutional stature. *See generally* Morgan, "The Privilege Against Self-Incrimination", 34 *Minn. L. Rev.* 1 (1949); Pittman, "The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America", 21 *U. Va. L. Rev.* 763 (1935). In New Jersey, although the privilege was not included in a constitutional provision, "the common law doctrine, unaltered by legislation or by lax practice," continued to have its full force. *State v. Zdanowicz,* 69 *N. J. L.* 619, 622 (E. & A. 1903).

 

statutory enactment, is found in *Rules of Evidence* 24 and
25, *N. J. S. A.* 2A:84A–18 and 19. The reason for the privi-
lege was expressed by Mr. Justice Brennan, when a member
of this Court, in *In re Pillo, supra*:

\* \* \* In modern concept its wide acceptance and broad interpre-
tation rest on the view that compelling a person to convict himself
of crime is "contrary to the principles of a free government" and
"abhorrent to the instincts of an American," that while such
a coercive practice "may suit the purposes of despotic power, \* \* \*
it cannot abide the pure atmosphere of political liberty and personal
freedom." *Boyd v. United States*, 116 *U. S.* 616, 632, 6 *S. Ct.* 524,
29 *L. Ed.* 746, 751 (1886). [11 *N. J.* at 15–16]

 There can be no doubt that the right of an accused
or a suspect to remain silent when in police custody or under
interrogation has always been a fundamental aspect of the
privilege in this state. In *State v. Ripa,* 45 *N. J.* 199 (1965),
the Court stated: "Needless to say, a suspect is under no
duty to give a statement; on the contrary he is privileged to
say nothing." *Id.* at 204. This right, of course, underlies
the decision in *Escobedo v. Illinois,* 378 *U. S.* 478, 485, 84
*S. Ct.* 1758, 1762, 12 *L. Ed.* 2d 977, 983 (1964), and is the
basis of the Fifth Amendment privilege implemented in *Mi-
randa, supra,* 384 *U. S.* at 467–68, 86 *S. Ct.* at 1624, 16
*L. Ed.* 2d at 720. It is implicit in the first paragraph of our
*Evid. R.* 25 covering the privilege. Its significance is further
demonstrated by our criminal court rules, requiring that a de-
fendant, on his first appearance before a court, whether an
upper tribunal or a municipal court, following the filing of a
complaint, must be informed by the judge "of his right not
to make a statement as to the charge against him \* \* \*." *R.*
3:4–2, 7:2 and 7:3–1. *McCormick, Evidence* § 130, at 272
(2d ed. 1972), summarizes it in this fashion: "The privilege
confers a significantly different right upon one who is the
accused in a criminal proceeding as compared to one who is
simply a witness in a criminal or other proceeding. Basically,
the right of an accused is the right not only to avoid giving

incriminating responses to inquiries put to him but also to be free from the inquiries themselves."[9]

The practical effect of the privilege to remain silent is, as we held a decade ago, "that when a defendant expressly refused to answer, no inference can be drawn against him under the doctrine of acquiescence by silence or any other concept," *State v. Ripa, supra,* 45 *N. J.* at 204, and no comment thereon may be made to the jury, *State v. Lanzo,* 44 *N. J.* 560, 563 (1965), following *Griffin v. California, supra.* This being so, it should certainly follow that a defendant is under no obligation to volunteer to the authorities at the first opportunity the exculpatory story he later tells at his trial and cannot be penalized directly or indirectly if he does not. While the situation in *Ripa* was that of the State offering evidence of a refusal to answer as substantive proof of guilty on its own case, we think the result should be no different when it is presented by way of attempted impeachment of a defendant's exculpatory testimony through cross-examina-

---

[9]Despite the age and strength of the privilege, there existed for a century or more in this state and elsewhere a countervailing doctrine of assenting silence, or the tacit or adoptive admission, arising when an accusation was made in circumstances in which silence by the accused in the face of it could be said to bespeak an agreement with the truth of the charge. *See, e. g., Donnelly v. State,* 26 *N. J. L.* 601, 613–14 (E. & A. 1857) ; *State v. D'Adame,* 84 *N. J. L.* 386, 391–92 (E. & A. 1913) ; *State v. Kobylarz,* 44 *N. J. Super.* 250, 256–59 (App. Div.), certif. den., 24 *N. J.* 548 (1957). *See also* Annotation, "Admissibility of inculpatory statements made in presence of accused and not denied or contradicted by him," 80 *A. L. R.* 1235 (1932), supplemented, 115 *A. L. R.* 1510 (1938). In recent years, we seriously questioned the soundness of the doctrine. *See, e. g., State v. Butler,* 32 *N. J.* 166, 181–84 (1960), *cert.* den., 362 *U. S.* 984, 80 *S. Ct.* 1074, 4 *L. Ed.* 2d 1019 (1960) ; *State v. Ripa, supra,* at 203–04. Although the adoptive admission continues to be recognized by our evidence rules (*Evid. R.* 63(8)(b)), we consider that the doctrine is no longer viable, as far as silence of a criminal defendant is concerned, and that the first paragraph of *Evid. R.* 25 is to be so read. *See also* Report of the New Jersey Supreme Court Comm. on Evidence 164 (1963), mentioning the abuses of the assenting silence doctrine.

tion, and we so hold as a matter of state law. The privilege of silence is substantially eroded and reliance upon it unjustifiably penalized in either situation. We may add that we do not interpret *Harris v. New York, supra,* to indicate a different result in the situation before us, but, even if it should, we choose to impose a stricter standard as a matter of state law.

That conclusion is buttressed by appropriate application of fundamental principles of the law of evidence. (It will be recalled that in this regard, as noted above, the writer is speaking only for himself and for Justice Mountain.) While "all relevant evidence is admissible" in the courts of this state, except as otherwise provided in the Rules or by other law of the state (*Evid. R. 7*), and "'[r]elevant evidence' means evidence having any tendency in reason to prove any material fact" (*Evid. R. 1(2)*), the test of relevancy still ought be the probative value of the proffered evidence with respect to the points in issue, or put another way, whether such evidence renders the desired inference more probable than it would be without the evidence. Although even this test is broad and favors admissibility, relevant evidence may still be, and should be, excluded when "its probative value is substantially outweighed by the risk that its admission will * * * (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury." *Evid. R. 4 (N. J. S. A. 2A:84A–16).*

And such was the basic thrust of the Supreme Court's reasoning in *Hale, supra.* The ambiguity of custodial silence dilutes its probative force and contraindicates that concept of threshold and total inconsistency (with later exculpatory statements at trial) which is the very base of its evidential worth. 3A *Wigmore, Evidence* § 1040 (Chadbourn rev. 1970); *United States v. Harp, supra.* Add to this the involved factors of confusion and potential prejudice and one can see quite clearly why exclusion is the desirable and fairer rule.

██ For silence by a criminal suspect in custody or under interrogation in the face of an accusation or in the form of refusal to answer queries is certainly equivocal. *State v. Ripa, supra,* 45 *N. J.* at 203. It is even more so when it amounts to failure to volunteer an exculpatory story. There are many reasons why a person in such a situation may choose to say nothing. A likely explanation is conscious reliance on his right to remain silent. Another is a general feeling that it is better not to say anything at all when surrounded by police or officials in a fearful atmosphere. Still another, in the case of an alibi, might be the simple lack of immediate recollection of the defendant as to his whereabouts at the time of the occurrence. So it would seem that evidence of such silence is not truly probative or soundly "relevant," but even if it should be thought so, it has great capacity for prejudice and misleading of the jury and ought to be excluded on that ground.[10]

The State urges, however, that we have already taken a position in favor of the propriety of this type of impeaching cross-examination by virtue of the decision in *State v. Burt,* 59 *N. J.* 156 (1971), *cert.* den., 404 *U. S.* 1047, 92 *S. Ct.* 728, 30 *L. Ed.* 2d 735 (1972), which affirmed the Appellate Division for the reasons expressed in the latter's opinion reported in 107 *N. J. Super.* 390 (1969). The underlying circumstances were markedly different from those in the in-

---

[10]We think the rule of impropriety of cross-examination of a defendant with respect to silence in police custody which developed in this case should not depend on whether or not the defendant received his *Miranda* warnings. *State v. Griffin,* 120 *N. J. Super.* 13 (App. Div. 1972), certif. den., 62 *N .J.* 73 (1972), held that such questioning was improper when the warnings had been given, but apparently that court would have found no error if the warnings had not been given. *See also State v. Morales,* 127 *N. J. Super.* 1 (App. Div. 1974). We see no meaningful basis for a distinction. The right to remain silent existed long before *Miranda;* that decision, for present purposes, required only that a defendant be reminded of it so that he could make an appropriate choice before any interrogation.

stant case and the opinion has to be read in the light thereof. We are satisfied that the result in *Burt* was correct.

The charge in that case was murder — the shooting of a friend. The defense at trial was that the shooting was accidental.[11] The proofs up to the point of the cross-examination in question established that defendant had not sought medical or other assistance for his injured friend after the incident, had left the locale without knowing whether he was dead or alive and had not reported the occurrence to the police when he was arrested for another offense a few hours later (the police at that time did not know of the shooting), nor indeed to anyone. The purpose of the cross-examination was, in essence, to bring all this out and thus convince the jury that the trial testimony of accidental shooting could not be true. (See the full course of questioning set forth in the separate opinion, 59 *N. J.* at 161–62). It was in fact not a true case of silence in police custody as to an exculpatory story, but rather one of *conduct*, albeit non-action, after the charged crime inconsistent with defendant's story at trial. As such, questioning of a defendant thereon runs into none of the difficulties of the self-incrimination privilege or of the law of evidence and is entirely proper.[12] It is akin to equally ap-

---

[11]The Appellate Division had previously stated the facts of the case, but a fuller narration of the events and trial testimony is contained in Justice Hall's separate opinion, 59 *N. J.* at 158–63.

[12]Burt later sought habeas corpus in the federal courts. The District Court awarded the writ on the basis that his right to remain silent had been violated by the cross-examination. *United States ex rel. Burt v. Yeager*, 342 *F. Supp.* 188 (D. N. J. 1972). The Circuit Court of Appeals reversed, with two opinions, 475 *F.* 2d 234 (3d Cir. 1973), and certiorari was denied by the United States Supreme Court, three Justices dissenting. 414 *U. S.* 938, 94 *S. Ct.* 243, 38 *L. Ed.* 2d 165 (1973). Both Circuit Court opinions can be read to express the view we take here, *i. e.*, that this was a case of prior inconsistent conduct, which may properly be probed by the State on cross-examination, rather than a situation of mere silence in police custody. *See* 475 *F.* 2d at 236, *id.* at 238. Where the non-verbal conduct is intended to be communicative

propriate cross-examination or rebuttal testimony with respect to prior *statements* inconsistent with the exculpatory story told at trial. *See, e. g., State v. Kimbrough,* 109 *N. J. Super.* 57, 65–68 (App. Div. 1970).

The rule we settle here today is not to be given retroactive application except as to cases where direct review is pending or remains available as of this date. In this regard we follow the course adopted by the United States Supreme Court in *Tehan v. Shott,* 382 *U. S.* 406, 86 *S. Ct.* 459, 15 *L. Ed.* 2d 453 (1966), concerning a like problem after the decision in *Griffin v. California, supra,* which had held invalid comment on the exercise of the privilege against self-incrimination.

The judgments of the Appellate Division are affirmed.

SULLIVAN, J. (concurring in result). I think the majority opinion is too restrictive of the State's right to probe a defendant's credibility as a witness. A defendant has a right to remain silent when arrested or at trial, and no adverse inference can be drawn therefrom. This right is guaranteed not only by the Fifth Amendment but also, as the majority notes, "is enshrined in the common law." A defendant's mere silence can never be substantive evidence of guilt admissible as part of the State's main case.

However, where a defendant elects to waive his right to remain silent, and testifies at trial in his own defense, he thereby puts in issue his credibility as a witness. To that end he may be tested as to the veracity of his testimony and whether or not the story he tells is fabricated or conceived after the event. Depending on the facts of the particular case, prior silence can be a relevant consideration in weighing the credibility of an exculpatory story revealed for the first time at trial.

---

rather than being a mere non-assertive act, however, the privilege may apply. *Cf. State v. Williams,* 97 *N. J. Super.* 573, 599–600 (Cty. Ct. 1967).

The person who can demonstrate that he was not involved in a criminal episode will ordinarily protest his innocence at the first opportunity. Should he choose to remain silent when arrested and then at trial present a completely exculpatory version of events, the State ought to have the right to ask him why he did not tell the police what he now says from the witness stand. If his answer is that he was relying on his right to say nothing, or that the atmosphere was hostile and he was frightened and confused, or wanted to talk to an attorney first, whatever he says, the jury can consider this in weighing the credibility of his courtroom testimony. It is not unheard of for a defendant in a criminal case to listen to all of the incriminating details proved by the State and then tailor an exculpatory story which fits neatly into what the State has proved. Silence at the time of arrest can never be substantive evidence of guilt but it can be relevant to the credibility of defendant's later version of innocence. In such circumstances, cross-examination as to the prior silence is proper and I believe within the rationale of *Harris v. New York,* 401 *U. S.* 222, 91 *S. Ct.* 643, 28 *L. Ed.* 2d 1 (1971), as well as being permitted by our *Evidence Rule* 25(d) (*N. J. S. A.* 2A:84A-19).

▮ In the instant case it does not appear that defendant Deatore was questioned at all when he was arrested. For that reason his silence at that time could be said to have little or no probative weight in considering the veracity of his testimony as to alibi given at trial. *United States v. Hale,* 422 *U. S.* 171, 95 *S. Ct.* 2133, 45 *L. Ed.* 2d 99 (1975). But these facts were presented to the jury and presumably considered by it in considering defendant's credibility as a witness. Even if the cross-examination be considered technically improper because of the foregoing, since the proof of guilt of both defendants was overwhelming, I would find any error to be harmless under *Chapman v. California,* 386 *U. S.* 18, 87 *S. Ct.* 824, 17 *L. Ed.* 2d 705 (1967). However, I agree we must reverse both convictions because of the juror incident referred to in the majority opinion.

Justice SCHREIBER joins in this opinion.

PASHMAN, J. (concurring in result and dissenting). In this case, we decide *inter alia* a basic and important principle of law to which I fully adhere: that at trial the prosecution may not comment upon or pose questions to a defendant concerning his silence or his failure to disclose exculpatory information to the police at or about the time of his arrest. Such questioning will not be permitted even where the State seeks to establish defendant's reticence for the sole purpose of undermining his credibility after he has testified at trial to an exculpatory story.

The majority of this Court predicates this holding upon the fundamental privilege against self-incrimination. *Ante* at 113. The Chief Justice, speaking for himself and Justice Mountain, also grounds this decision upon basic principles of evidence law. *Ante* at 116. To the extent that the several opinions of this Court reach the result noted above, I am in accord with them.[1] I differ from these opinions, however, in the following important respects.

---

[1]To the extent that the opinion of Justice Sullivan, in which Justice Schreiber joins, relies upon neither ground and would reject this important principle altogether, I must totally and emphatically part ways with it.

Arguing that where a defendant testifies as to an exculpatory story at trial, the prosecution should be allowed to question a defendant as to his decision to remain silent at the time of his arrest, Justice Sullivan seeks to distinguish evidence which concerns a defendant's veracity from evidence which relates to a substantive issue in the case. In making this distinction, he also impliedly argues that whenever a defendant testifies at trial and thereby puts his credibility in issue, all evidence probative of his veracity should be admissible. This position ignores the fact, noted elsewhere (see footnote 3 *infra*), that evidence which is otherwise probative as to a witness' credibility is frequently excluded on the grounds that it contravenes some other important policy. *See, e. g., State v. Boone*, 66 *N. J.* 38 (1974). My Brothers' position also fails to recognize that where testimony will infringe upon a defendant's privilege against self-incrimination, our rules of evidence make no exception permitting the introduction of such testimony for the limited purpose of testing a defendant's credibility. *See State v. Miller*, 67 *N. J.* 229, 242-43 (1975) (Pashman, J., dissenting).

First, I cannot agree with the majority holding that the prejudice accruing from the impermissible questioning of Deatore does not "rub off" on Mallon. *Ante* at 106–107. It is well known that juries often experience difficulty in distinguishing between impeachment testimony and testimony which goes to substantive issues in the case. For example, jurors frequently confuse the impeachment of a testifying defendant with direct evidence of the defendant's guilt, rather than viewing it as evidence which discredits his alibi without any *independent* bearing on his guilt. In such circumstances, cautionary instructions are usually considered inadequate to clarify this distinction and cure the erroneous association. *State v. Boone,* 66 *N. J.* 38, 48 (1974); *State v. Miller,* 67 *N. J.* 229, 240 (1975) (Pashman, J., dissenting) and cases cited therein. Because Deatore and Mallon are accomplices, evidence which tends to establish Deatore's guilt will certainly incriminate Mallon. In this regard, the prejudicial effect which the impermissible cross-examination has on the defendant-witness will have an identical effect on the non-testifying defendant. If both defendants are found guilty, it would be manifestly unjust to allow the improperly impeached defendant (Deatore) to have a new trial, while affording no relief whatsoever to his equally prejudiced codefendant (Mallon). For these reasons, I would hold that where codefendants are tried together and are accomplices or where their guilt is otherwise inextricably related, the prejudice arising from illegal questioning as to the silence of one defendant will in most instances "rub off" on the other defendant.

---

Finally, as Justice Sullivan himself correctly observes, "[a] defendant has a right to remain silent when arrested *or* at trial, and *no adverse inference* can be drawn therefrom." *Ante* at 119 (emphasis supplied). In order to be used effectively in undermining a defendant's credibility, the fact that a defendant chose to remain silent at the time of his arrest must give rise to an "adverse inference" which burdens his right to remain silent just as much as if the fact of his silence were used to establish a substantive issue in the case.

Since the majority has on other grounds ordered a new trial for both Deatore and Mallon, *ante* at 104–106, I find it unnecessary to dissent with respect to the Court's disposition of this case.

Second, I wish to emphatically dissociate myself from those portions of the majority opinion which impliedly support the view adopted by the United States Supreme Court in *Harris v. New York,* 401 *U. S.* 222, 91 *S. Ct.* 643, 28 *L. Ed.* 2d 1 (1971) that statements taken from a defendant in violation of *Miranda v. Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966) are admissible for the limited purpose of impeachment where the defendant chooses to testify at trial. As I discussed at length in my dissenting opinion in *State v. Miller, supra,* I firmly believe that *Harris v. New York, supra,* was wrongly decided on both technical and policy grounds and for these reasons should not have been adopted as a matter of State law. *State v. Miller, supra,* 67 *N. J.* at 237, 242 (Pashman, J., dissenting). I continue to adhere to this view.[2]

---

[2]In *State v. Miller, supra,* I argued, for example, that authorizing use of illegally obtained testimony even for the limited purpose of testing a defendant's credibility would severely burden the defendant's right to remain free from self-incrimination, would significantly undermine the deterrent effect of *Miranda* and would make the courts "a vehicle for government wrongdoing." *Id.,* 67 *N. J.* at 238–40 (Pashman, J., dissenting). In this regard, I note with approval that the California Supreme Court recently voted to overrule its decision in *People v. Nudd,* 12 *Cal.* 3d 204, 115 *Cal. Rptr.* 372, 524 *P.* 2d 844 (Sup. Ct. 1974), which had adopted the *Harris* rationale and thereby has held, as a matter of state law, that the privilege against self-incrimination forbids impeachment of a defendant with an inculpatory statement obtained from him in violation of the safeguards set forth in *Miranda. People v. Disbrow,* 16 *Cal.* 3d 101, 127 *Cal. Rptr.* 360, 545 *P.* 2d 272 (Sup. Ct. 1976). In a concurring opinion, in which he explained why he changed his vote from that entered in *People v. Nudd, supra,* Chief Justice Wright made the following comments which are relevant to the grounds cited above with respect to *State v. Miller, supra:*

I concur. As I joined the majority in People v. Nudd (1974) 12 Cal. 3d 204, 115 Cal. Rptr. 372, 524 P. 2d 844, which was

In his opinion, the Chief Justice, speaking for a majority of this Court, observes that some courts have found an "inescapable" analogy between *Harris* and cases similar to the instant case. Citing *Harris* for the proposition that when a defendant elects to testify at trial he becomes subject to all of the traditional truth-testing devices of the adversary

filed on July 31, 1974, and I now join the majority in overruling that opinion, I believe a brief explanation of my change in position on the principal issue raised in Harris v. New York (1971) 401 U. S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1, is warranted. When I signed *Nudd* I was motivated primarily by my abhorrence of the possibility of perjured testimony although as a long-time trial judge I well recognized that defendants in criminal actions were prone to commit a "little" perjury when their life or liberty was at stake. I, of course, did not condone such conduct. Further, I could not at that time conceive that evidence obtained in incidents such as the present flagrant violation of Miranda v. Arizona (1966) 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 and People v. Fioritto (1968) 68 Cal. 2d 714, 68 Cal. Rptr. 817, 441 P. 2d 625, would ever be presented to a trier of fact. *Miranda* articulates a sound and workable exclusionary rule which is still the law of this land. I now recognize that rule is eviscerated when police officers can ignore the duty to give the warnings or, as in the instant case, violate *Miranda* and *Fioritto* requirements knowing full well that the illegally obtained statements may be admissible for impeachment purposes if a defendant elects to testify.

Moreover, as the majority opinion so convincingly sets forth, adherence to *Harris* and *Nudd* will force revival of numerous, elusive tests of voluntariness to determine if statements obtained in violation of *Miranda* are admissible or inadmissible for purposes of impeachment. A host of appellate opinions on this imprecise test would soon be spawned. *Miranda* eliminated the need for such inquiries and I believe that salutary effect should not be thwarted.

Finally, I find that fundamental fairness to individuals accused of the commission of a public offense demands that *Harris-Nudd* be rejected. Regardless of the precision of instructions limiting the trier of fact to consideration of the illegally obtained statements solely for impeachment purposes, it is simply unrealistic to believe that such statements will not be considered by the trier of fact as substantive evidence of guilt. I now recognize that this manifestly prejudicial and unfair use of the illegally obtained evidence would transform *Miranda* into a rule of form rather than one of substance. Such a transformation should not occur in California.

process,[3] such courts have allowed prosecutors to question a defendant as to his failure to disclose exculpatory information by remaining silent at the time of his arrest. *See e. g., United States v. Ramirez,* 441 *F.* 2d 950 (5 Cir. 1971), *cert.* den., 404 *U. S.* 869, 92 *S. Ct.* 91, 30 *L. Ed.* 2d 113 (1971).

I note with approval that in rejecting this view, the Court has adopted portions of the dissent in *State v. Miller, supra,* and has expressly stated:

> We may add that we do not interpret *Harris v. New York, supra,* to indicate a different result in the situation before us, but even if it should, we choose to impose a higher standard as a matter of state law. [*Ante* at 116].

I have no quarrel with this statement. I strongly urged this court in *State v. Miller, supra,* 67 *N. J.* at 242 (Pashman, J., dissenting) "to adopt as a matter of State law more rigorous rules for the protection of the individual, . . . ."

However, as a result of my position in *State v. Miller, supra,* I must dissociate myself from that portion of the majority opinion which seeks to distinguish the situation in *State v. Miller, supra,* and its companion case, *State v. Davis,* 67 *N. J.* 222 (1975), from that of the instant case.

> We emphasize that this position goes beyond a situation where a defendant did make a statement at or near arrest, which is inconsistent with his trial testimony, . . . . [*Ante* at 108].

Apparently, the majority chooses to fully protect those defendants who remain silent at or near the time of their arrest, but fails to provide comparable protection to those de-

---

[3]In *State v. Miller, supra,* I sought to show the inherent fallacy of this proposition by noting that the State's right to make use of "traditional truth-testing devices" is not absolute: "It is a common phenomenon in the law that evidence probative as to substantive issues *or the credibility of a witness* is excluded because its admission would conflict with other important policies." [67 *N J.* at 241; emphasis supplied]. *See, e. g., Evid. R.* 26, *Evid. R.* 28, *Evid. R.* 29, *Evid. R.* 34, *Evid. R.* 52 and *State v. Boone, supra.*

fendants in similar circumstances who make statements to the police without full knowledge of their constitutional rights and under the coercive pressures of police interrogation which were fully considered in *Miranda*. I find this distinction to be illogical and unpersuasive.

For similar reasons, I wish to dissociate myself from the majority's reference to *State v. Kimbrough,* 109 *N. J. Super.* 57 (App. Div. 1970) and its analogizing that case to *State v. Burt,* 59 *N. J.* 156 (1971), *cert.* den. 404 *U. S.* 1047, 92 *S. Ct.* 728, 30 *L. Ed.* 2d 735 (1972). *See ante* at 118–119. I distinguish these two cases on the grounds that the latter involved conduct rather than pure speech, while the former concerned statements issued by defendants without the requisite showing that *Miranda* warnings had been given. Consequently, the former is more analogous to *State v. Miller, supra,* from which I dissented, than to *State v. Burt, supra.*

Finally, while I agree with the Chief Justice that the principle of law which we decide today derives from the law of evidence as well as from the privilege against self-incrimination, I nonetheless disagree with the implication that, were the fact of a defendant's silence at the time of his arrest found to be "relevant" to the issue of his veracity (as, for instance, if it were found to be "totally inconsistent" with the defendant's trial testimony,) then this evidence might be admissible. *Compare United States v. Hale,* 422 *U. S.* 171, 95 *S. Ct.* 2133, 45 *L. Ed.* 2d 99, 104 (1975) *with Raffel v. United States,* 271 *U. S.* 494, 46 *S. Ct.* 566, 70 *L. Ed.* 1054 (1926). As already noted, I believe that any questioning which infringes upon a defendant's fundamental privilege against self-incrimination is improper, whether it is directed toward substantive issues in the case or is limited to the issue of defendant's credibility. This is equally true whether the interrogation concerns a defendant's silence or concerns inculpatory statements obtained from him in violation of *Miranda*.

Nevertheless, principles of evidence law do buttress our conclusion. It is a fundamental rule of evidence that even

if certain evidence is clearly relevant, it may still be excluded where its probative value is outweighed by the risk of undue prejudice. *See Evid. R.* 4 (*N. J. S. A.* 2A:84A–16). Although, as Justice Clifford and Judge Conford correctly observe, the task of weighing the probative value of proffered evidence against the risk of prejudice is *"normally* . . . left to administration of the trial judge" (*ante* at 128, emphasis supplied), where such fundamental rights as the privilege against self-incrimination are involved, this Court may and should determine, as a matter of law, that the tainted evidence is inadmissible. I would, therefore, conclude that the relevance of a defendant's silence at or near the time of his arrest, which is at best only equivocal and ambiguous (*see United States v. Hale, supra,* 422 *U. S.* at 176–178, 95 *S. Ct.* at 2136–2138, 45 *L. Ed.* 2d at 104–106), is always outweighed by the potential for prejudice where the privilege against self-incrimination is implicated. In this sense, I find that the principles of evidence law and the right to be free from self-incrimination are inextricably related and are equally relevant to the decision in this case.

CLIFFORD, J., and CONFORD, P. J. A. D., Temporarily Assigned, concurring. We concur in the results reached in the opinion of the Chief Justice. The present opinion is prompted only by the partial resting in that opinion of the disapproval of comment or cross-examination by the State as to a testifying defendant's silence upon arrest, upon its asserted probative insufficiency. We thoroughly agree with and join in the opinion to the extent that it forbids comment or cross-examination of the kind mentioned on the ground of the erosion or depreciation of the privilege against self-incrimination. That ground of the ruling is strong enough to sustain it. Adding the justification of insufficiency of probative weight is unwarranted on the intrinsic merits of the proposition and may have the untoward effect of weakening by analogy the vital role of the trial judge in ruling on

matters of evidential weight and relevance in other contexts, civil and criminal.

Rules of evidence in relation to probative weight or relevance are normally wisely left to administration of the trial judge. "'Relevant evidence' means evidence having *any* tendency in reason to prove any material fact." *Evid. R.* 1(2) (emphasis added). Our rules provide for the safety-valve of *discretionary* exclusion by the trial judge of evidence whose probative value is substantially outweighed by the risk of undue consumption of time, undue prejudice or confusion of the jury. *Evid. R.* 4.

Concededly there may well be attendant circumstances reducing to a level of minimal probative weight the silence of an accused in the face of police assertions of criminal conduct. This might be said to be the case, for example, when such silence follows administration of *Miranda* warnings to the defendant. See *State v. Griffin,* 120 *N. J. Super.* 13, 15 (App. Div. 1972), certif. den., 62 *N. J.* 73 (1973). So, too, where the defendant's prior silence is in the context of an express assertion of his privilege before an investigating grand jury. *Grunewold v. United States,* 353 *U. S.* 391, 77 *S. Ct.* 963, 1 *L. Ed.* 2d 931 (1957). But none of the foregoing is to gainsay the fundamentally established principle of admissibility of proof that an accusatory statement was made in the presence and hearing of an accused and that his response or absence thereof was such as to justify the inference that he agreed with or "adopted" the accusation. *McCormick on Evidence* (2d ed 1972) p. 353. As there stated (*ibid.*):

"Underlying the rule is the assumption that human nature prompts an innocent man to deny false accusations and consequently a failure to deny a particular accusation tends to prove belief in the truth of the accusation."

See also *Adamson v. California,* 332 *U. S.* 46, 60, 67 *S. Ct.* 1672, 91 *L. Ed.* 2d 1903 (1947) (Frankfurter, J., concurring).

True it is that, in view of Fifth Amendment and *Miranda* implications, the evidence principle stated has been hedged about with qualifications in the criminal context, *McCormick, op. cit.*, 353–356, particularly by the confinement of the use of such silence upon arrest to impeachment of the credibility of the defendant as a witness. See the opinion of Justice (then Judge) Sullivan in *State v. Burt*, 107 *N. J. Super.* 390, 393, aff'd o. b. 59 *N. J.* 156 (1971), *cert.* den. 404 *U. S.* 1047, 92 *S. Ct.* 728, 30 *L. Ed.* 2d 735 (1972).

But insofar as probative weight, as such, is concerned, and until the spate of recent litigation on the point following the decision in *Miranda v. Arizona*, 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694 (1966), silence as well as inconsistent statements by an accused upon arrest have long been regarded as admissible on the issue of the accused's credibility in testifying to exculpatory facts. This is so whether the matter is considered from the standpoint of trustworthiness, inconsistency, reliability or probative value of such silence. See the cogent expression to this effect in the opinion of Judge Hunter in *Agnellino v. State of New Jersey*, 493 *F.* 2d 714, 722 (3d Cir. 1974).

The high value we attach to the preservation of the privilege against self-incrimination in this State by exclusion of evidence of the type here under discussion to attack a testifying defendant's credibility would be accentuated by our frank recognition that in so doing we are sacrificing to some extent a legitimate and useful fact-finding tool in the criminal trial process.

We are of course aware that a majority of the United States Supreme Court chose to arrive at the same result this court does in the present case, in *United States v. Hale*, 422 *U. S.* 171, 95 *S. Ct.* 2133, 45 *L. Ed.* 2d 99 (1975), by the approach of deprecating the evidential value of silence in the indicated circumstances rather than on the constitutional or policy grounds of vindicating the privilege. We can only say, with deference, that the opinion of the court does not make out a

credible case in that regard as against the tests of common human experience and logic reflected by the evidence rule expressed by the *McCormick* text quoted from above.

SULLIVAN, CLIFFORD and SCHREIBER, J. J., and CONFORD, P. J. A. D., concurring in the result.

PASHMAN, J., concurring in the result and dissenting.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.