223 N.J. Super. 21 (1988)
537 A.2d 1317
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND ACETA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 1987.
Decided February 10, 1988.
Before Judges MICHELS, GAYNOR and A.M. STEIN.
Alfred A. Slocum, Public Defender, attorney for appellant (William Welaj, designated attorney, of counsel and on the brief; Lieberman, Ryan, Welaj & Miller, attorneys).
*22 W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Meredith A. Cote, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
Tried to a jury, defendant was convicted of two counts of attempted murder, contrary to N.J.S.A. 2C:5-1 and 2C:11-3, two counts of aggravated assault, contrary to N.J.S.A. 2C:12-1b(1), and possession of a weapon without a permit, contrary to N.J.S.A. 2C:39-5b. He was acquitted of two counts of possession of a weapon for an unlawful purpose. For sentencing purposes each count of aggravated assault was merged with a count of attempted murder and the State's motion for an extended term was granted. A 40-year aggregate custodial sentence with a 20-year parole disqualifier was imposed consecutive to a sentence then being served by defendant.
On this appeal from his conviction and sentence, defendant advances the following contentions:
I. THE DEFENDANT'S PRIVILEGE AGAINST SELF-INCRIMINATION WAS IMPERMISSIBLY INVADED AS A RESULT OF CROSS-EXAMINATION AS TO THE DEFENDANT'S FAILURE TO INFORM THE POLICE OR ANYONE ELSE OF HIS ALIBI DEFENSE UNTIL SHORTLY PRIOR TO TRIAL.
II. THE PROSECUTOR'S SUMMATION EXCEEDED THE BOUNDS OF PROPRIETY.
III. THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE BY IMPOSING CONSECUTIVE TERMS WITH MAXIMUM PAROLE DISQUALIFIERS.
A complete recitation of the facts giving rise to defendant's indictment and conviction for the cited offenses is not necessary to our consideration of the issues raised on this appeal. It is sufficient to note that the State's proofs permitted the jury to find that on October 30, 1983, "Mischief Night," two officers of the South Amboy Police Department were shot by defendant, masquerading as a cowboy, as one of the officers attempted to arrest defendant on some outstanding bench warrants for traffic *23 violations. After the shooting, defendant eluded the officers. Several hours later he was found at his brother's apartment in Old Bridge, arrested and transported to police headquarters. At headquarters, when questioned about the events of the evening, defendant indicated he desired to speak to either his girl friend or his mother. However, the police were unable to contact either of them until some time later. With defendant's consent, a neutron activation test was conducted to determine whether defendant had recently fired a weapon. As the officer began to perform the test on defendant's right hand, defendant reportedly said "I shot him with my left." The test was performed on both hands, but the results were inconclusive. Several hours later, defendant allegedly was heard yelling from his cell that he had "blown" two officers away that night and when he got out on bail he would "take care" of the rest of them. Additionally, later on that morning, after being transferred to a county holding cell, a correction officer overheard defendant telling fellow inmates that he had pulled a gun from under his jacket after being stopped by two police officers and began shooting.
A gun subsequently found behind one of the buildings in the apartment complex where defendant was found was determined to be the weapon which had discharged the bullet taken from the shoulder of one of the wounded officers. Some live shells for the gun were also found in the area.
Testifying in his own behalf, defendant stated that while he lived in South Amboy, during the time period in question he also maintained an apartment in Newburgh, New York, where he was employed by Conrail. On Saturday, October 29, he had worked from 4:00 p.m. to midnight, and as he prepared to leave in his van he encountered mechanical difficulties involving overheating and a weak battery. He pulled into the railroad yard to check the trouble and eventually was questioned by one of the railroad policemen. Upon learning that defendant's license had been suspended for a previous drunk driving violation, the police advised him against driving. Accordingly, defendant *24 slept in the van until approximately 1:30 p.m. on Sunday and traveled by train and bus to his brother's apartment in Old Bridge where he stayed on weekends. After taking a shower, defendant watched some football on TV, then ate supper. He later had a telephone conversation with his girl friend during which he told her that he was not going out that evening. It was also his testimony that he never left the apartment that evening and was unaware of what had occurred until his brother came home at approximately 10:30 p.m. and told him that the police were searching for him in connection with the shooting of two officers. After his arrest, defendant stated he continuously denied shooting any police officers and at trial he denied making any of the statements attributed to him by the police. Specifically, he disavowed ever saying he had shot anyone with his left hand or yelling about blowing away two cops or that he was going to blow away the rest of the police force when he was released on bail. Defendant also denied having acknowledged to any fellow inmates that he had shot two police officers.
In cross-examining defendant concerning his defense of being at his brother's apartment at the time of the crime, the prosecutor focused upon defendant's failure to have disclosed this defense prior to the preparation of a Notice of Alibi on March 8, 1985.[1] After having the Notice of Alibi marked for identification[2] and establishing that defendant was arrested in October 1983, the prosecutor continued:

*25 Q. How many times did you come to court in 1984? You were arraigned in January, isn't that right? January 11?
A. I don't remember the date.
* * * * * * * *
A. You mean arraignment. I was arraigned October 31st.
* * * * * * * *
Q. Did you tell anybody from the State that it couldn't be you because you spent the night in your brother's apartment?
A. No, and no one asked.
Q. No one asked. How about when you came to court for the pretrial hearings that were conducted in March and May and July and were you telling anybody from the State it couldn't be me, you got the wrong guy. I spent the night at my brother's apartment?
* * * * * * * *
THE COURT: Any time that you came to court, did you ever tell anybody, either on behalf of the Court or State, that you were at your brother's apartment?
THE WITNESS: What do you mean? Like my lawyer?
THE COURT: Your lawyer, the Court, anybody.
THE WITNESS: I told them I wasn't guilty.
Q. That's not my question.
THE COURT: Did you ever tell them you were at your brother's?
THE WITNESS: Yes, I told them.
Q. Who did you tell?
A. I told Travis [Travis Francis, defendant's attorney]. He came down  I first seen him in September of 1984. He was with Jim Heaton. I told him.
Q. This is September of 1984. When you came, when we had the court hearings in January, you weren't present but this wasn't signed until March of 1985.
* * * * * * * *
Q. Mr. Aceta, the sum and substance of this is that since October 30th, 1983 you have been facing extremely serious charges, isn't that correct?
A. Yes.
* * * * * * * *
Q. Yet, all through 1984 did anyone interpose that on your behalf, this alibi that you couldn't be guilty because you weren't at the scene of the crime when the two officers were shot? Did that ever happen throughout any time in 1983 or 1984?
A. I don't know how to say this. We talked about a case, defenses  repeat that question.

*26 THE COURT: The question is at any time did, at any time before, couple of weeks ago did you ever sign a statement about your alibi?
THE WITNESS: No.
* * * * * * * *
Q. The fact of the matter is that prior to your coming to court on March 8, 1985, the very eve of trial, that nobody from the State ever heard about this alibi defense because you had never signed the alibi notice, isn't that right?
A. Yes. Wait. Yeah.
Q. So, for a year and a half you just sat on this alibi; isn't that right?
A. No.
The State's offer of the Notice of Alibi into evidence was denied as the trial judge considered its admission might create in the minds of the jurors an "inference or a conclusion that there was a duty upon the defendant ... in the connection with alibi defense to sustain some level of proof." Similar reasoning prompted the judge to preclude the prosecutor from commenting in his summation as to those named as witnesses in the Notice of Alibi. However, comment was permitted on the timing of the Notice as legitimate argument on credibility or recent fabrication.
In the closing argument, the prosecutor commented in the following manner:
Well, next comes the eleventh hour alibi defense. Now, you know in this case the defendant was charged the morning after the shooting in shooting two police officers and you know because the Judge told you that one of the things as proper, I am looking for his things. I am entitled to by the Rules and one of those things is notice of alibi and the Judge told you that I asked the defense for alibi in this case a number of months ago. As a matter of fact, I looked through my records. I asked for it in February of 1984. That is over a year ago and it is also clear from the record in this case, I didn't get it until March 8th, 1985. And then, I am provided this alibi where the defense says, you know, Prosecutor, I have been in court a lot of times, but I am now telling you you got it all wrong. I didn't shoot these cops. I wasn't even in South Amboy. I spent the entire night in my brother's apartment in Old Bridge. Now, and he testifies to that effect. He says I am with my brother, Danny, and I am with Karen, his wife, and their children. Later on they go and I am all alone by myself and what does he present in support of that? Well, he brings in Kathy Pilot to tell about this telephone call that she has supposedly made to Danny's apartment.
* * * * * * * *

*27 Now, you have heard Mr. Francis comment upon the defendant. He'd like to take the stand. Well, ladies and gentlemen, if you consider yourself a baseball game, it is now the bottom of the ninth. There is two outs and he is way behind. [If] he is going to beat this charge. He'd better get to the plate and start hitting a lot of homeruns because he got a lot of crown [sic], lot of runs to make up in this case, so now he is going to get up and he going to tell you he wants you to hear his side of the story, this side of the story which he forgot or neglected or somehow was unable to tell the State for the seventeen months he has had these various serious charges over his head, but now he is going to tell you this side twice....
Following the prosecutor's cross-examination of defendant and also upon the completion of the State's summation, defense counsel moved for a mistrial because of the questions and comments directed to defendant's failure to mention his alibi defense prior to March 8, 1985. In denying the first application, the trial judge concluded that "[t]he idea of cross examination for late supplied alibies as a matter of recent fabrication is well recognized law." This rationale was relied upon by the judge in denying defendant's motion following the prosecutor's summation. At that time, the judge observed:
In regard to the ruling on the alibi I again indicated that on the issue of recent fabrication that while [there] could be no comment on whether or not other witnesses were brought forward and indeed I wouldn't even let the notice in simply because it gave rise to the inference that the burden shifted  the characterization and the efforts to see the jury to make a judgment of credibility on the defendant's testimony, I think is within the ruling and within the law as I understand it.
In contending that harmful error was committed by the trial judge in permitting the cross-examination of defendant with respect to his failure to inform the State of his alibi defense until March 8, 1985, three days before trial, and in allowing the prosecutor to comment on this topic in his summation, defendant argues that such cross-examination and comment "impermissibly invaded the defendant's privilege against self-incrimination, denying to him his right to a fair trial." While countering with the argument that defendant's right to remain silent was not violated by the prosecutor's trial tactics, the State claims, nevertheless, that any error which might have thus been created was harmless beyond a reasonable doubt. Relying upon State v. Macon, 57 N.J. 325, 338 (1971), it is urged that *28 the error, if any, does not mandate a new trial as, even without the complained of cross-examination and summation, the evidence overwhelmingly supports the verdict. In our view, the prosecutor's attack upon defendant's failure to have previously disclosed his exculpatory alibi defense was so flagrant a violation of defendant's right to remain silent that this conviction cannot stand. A new trial is required.
R. 3:11-1 mandates that a bill of particulars concerning a proposed alibi defense be provided to the State by a defendant within ten days of the prosecutor's demand. The Notice of Alibi must be signed by the defendant and set forth "the specific place or places at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intended to rely to establish such alibi." R. 3:11-1. Failure to furnish such particulars may result in the exclusion of witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense or, under appropriate circumstances, limiting the extent of the alibi testimony. R. 3:11-2. Cf. State v. Caffee, 220 N.J. Super. 34 (App.Div. 1987), certif. den., 107 N.J. 640 (1987); State v. Francis, 128 N.J. Super. 346 (App.Div. 1974). The rule is not designed to compel a defendant to say anything. It merely requires the specified pretrial disclosure if, but only if, the defendant plans to assert an alibi. State v. Angeleri, 51 N.J. 382, 384-385 (1968), cert. den., 393 U.S. 951, 89 S.Ct. 372, 21 L.Ed.2d 362 (1968). See also State v. Baldwin, 47 N.J. 379, 388 (1966), cert. den., 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966).
Although defendant's noncompliance with the rule did not give rise to any sanctions, the trial judge deemed it permissible for the prosecutor to pursue this subject by way of cross-examination and argument because of the implication of recent fabrication on the part of defendant. We are constrained to conclude that such determination was contrary to the conclusion in State v. Deatore, 70 N.J. 100 (1976), that the prosecution may not comment upon or pose questions to a defendant concerning *29 his silence or his failure to disclose exculpatory information to the State at or after the time of his arrest, nor may such silence be used in an attempted impeachment of a defendant's exculpatory trial testimony. This conclusion was reached "as a matter of state law and policy," based upon the "privilege against self-incrimination which is enshrined in the common law." Id. at 112, 113 See also State v. Whitehead, 80 N.J. 343, 346-348 (1979); State v. Lyle, 73 N.J. 403 (1977); State v. Alston, 70 N.J. 95 (1976); State v. Micheliche, Jr., 220 N.J. Super. 532 (App.Div. 1987); State v. Merola, 214 N.J. Super. 108 (App.Div. 1986), certif den., 107 N.J. 91 (1987).
In Deatore, the reversal of defendant's conviction was upheld because of the improper questioning of defendant concerning his failure to have disclosed his alibi defense at the time of his arrest or later when he learned of the charges against him. There, when asked on cross-examination whether it was not true that he had refused to voice any exculpatory information to the police when arrested, defendant replied, "nobody asked me." Such questioning was deemed improper as being violative of defendant's common law privilege against self-incrimination and right to remain silent. Id. 70 N.J. at 114. Not only is a suspect or an accused under no duty to give a statement to the police at or about the time of his arrest, but on the contrary is privileged to say nothing. Ibid. As no inference can be drawn from the exercise of the privilege to remain silent nor may comment thereon be made to the jury, it follows "that a defendant is under no obligation to volunteer to the authorities at the first opportunity the exculpatory story he later tells at trial and cannot be penalized directly or indirectly if he does not." Id. at 115. The privilege of silence is substantially eroded when used either as substantive proof of guilt or in an attempt to impeach a defendant's exculpatory testimony through cross-examination. Id. at 115-116. As stated by the court, the rule is that
a defendant is under no obligation to volunteer to the authorities at the first opportunity the exculpatory story he later tells at his trial and cannot be *30 penalized directly or indirectly if he does not. While the situation in [State v.] Ripa [45 N.J. 199, (1965)] was that of the State offering evidence of a refusal to answer as substantive proof of guilty on its own case, we think the result should be no different when it is presented by way of attempted impeachment of a defendant's exculpatory testimony through cross-examination, and we so hold as a matter of state law. The privilege of silence is substantially eroded and reliance upon it unjustifiably penalized in either situation. [70 N.J. at 115-116]
The use of a defendant's post-arrest silence for the purpose of impeaching an exculpatory defense was recognized in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) as having federal constitutional implications. That the discrepancy between an exculpatory story at trial and silence at time of arrest gave rise to an inference of recent fabrication was deemed insufficient reason to permit cross-examination for impeachment purposes. Such use of a defendant's silence at the time of arrest and after receiving Miranda[3] warnings was deemed violative of the Fourteenth Amendment guaranty of due process. Id. at 619, 96 S.Ct. at 2245. The court reasoned:
Despite the importance of cross-examination, we have concluded that the Miranda decision compels rejection of the State's position.
* * * * * * * *
Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. [Citations omitted.] Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. [426 U.S. at 617-618, 96 S.Ct. at 2244-45]
While the due process infringement found by the Doyle court was based upon the unfairness of using a post-arrest silence against the defendant in the wake of the Miranda warnings, our State law precludes the use of a defendant's silence irrespective of whether Miranda warnings were given or understood. *31 State v. Deatore, 70 N.J. at 117, n. 10. Such impropriety extends to an attack upon the credibility of a defendant's self-defense theory based upon his prior silence, and, where "this defense was at the very heart of the case, the prosecutor's action was `of such a nature as to have been clearly capable of producing an unjust result ...' and hence in the magnitude of plain error. R. 2:10-2." [Citations omitted.] State v. Lyle, 73 N.J. at 410. See also State v. Whitehead, 80 N.J. at 346-348; State v. Alston, 70 N.J. at 98; State v. Merola, 214 N.J. Super. at 115-120 (App.Div. 1986). Cf. State v. Marks, 201 N.J. Super. 514, 530-531 (App.Div. 1985). The conclusion reached in Lyle was not dependent upon the assurance implied in the Miranda warnings. Rather, it was held as a matter of State law that it was manifestly improper for the prosecutor to use defendant's post-arrest silence to question his self-defense theory as a fabrication. The prosecutor's broadside attack through his cross-examination and closing argument was considered to have been clearly capable of producing an unjust result and hence in the magnitude of plain error. Id. 73 N.J. at 410.
It is clear from the record in the present case the defendant's privilege against self-incrimination was violated by the prosecutor's persistent inquiry on cross-examination concerning the defendant's failure to have previously asserted his alibi defense.[4] Defendant's right was further infringed upon by reference in the prosecutor's summation to the "eleventh hour alibi defense" and the analogizing of defendant's trial testimony to the "hitting [of] a lot of homeruns" during the last inning of a baseball game in which defendant had a "lot of runs to make up in this case," and was doing so by testifying as to his "side of the story which he forgot or neglected or somehow was unable to tell the State for the seventeen months he has had these various serious charges over his head...." The trial court's *32 rationale that the prosecutor's conduct was permissible in light of the implication of recent fabrication arising from the lately supplied alibi is unacceptable in view of the established rule that such an inference is an insufficient reason for permitting a defendant's silence to be used to attack his exculpatory trial testimony as a fabrication. Nor, can the prosecutor's questioning and remarks be justified on the basis of contradictory post-arrest statements made by the defendant. The alleged utterances made by defendant while in custody were not such inculpatory concessions of involvement in the offense as to constitute a waiver of his right to remain silent and thus permit the attempted impeachment of his alibi defense. The State's reliance on Lofton v. Wainwright, 620 F.2d 74 (5 Cir.1980) is misplaced as there the defendant constitutionally submitted to police questioning and had conceded involvement in the criminal conduct.
Our recognition of the violation of defendant's common law and constitutional rights renders it unnecessary for us to consider the remaining appellate contentions urged by defendant.
The judgment of conviction is reversed and the case is remanded to the Superior Court, Law Division, Middlesex County, for a new trial.
Reversed.
A.M. STEIN, J.S.C., t/a (concurring):
I reach the same result, but for somewhat different reasons than those advanced in the majority opinion. In my view, the prosecutor had a right to cross-examine defendant about what was accurately portrayed on summation as an eleventh-hour alibi defense. The question was relevant for the purpose of showing that this alibi was a recent fabrication.
It is beyond dispute that reversible error was committed when the prosecutor was permitted to ask defendant on cross-examination why, at any time after his arrest, he never told anybody that he was at his brother's apartment in Old Bridge *33 when two police officers were shot in South Amboy. The error was compounded when, in summation, the prosecutor commented that defendant had either neglected or was unwilling to report this alibi for the entire seventeen months between arrest and trial. As the majority opinion points out, a suspect or an accused is under no duty to give a statement to the police at or about the time of arrest. The privilege against self-incrimination gives a defendant the right to remain silent. No inference can be drawn from such silence, no comment may be made thereon by the prosecutor or the trial judge, and no defendant can be cross-examined about his silence to impeach the exculpatory story which he gives at trial. State v. Deatore, 70 N.J. 100, 115-116 (1976).
The trial judge enhanced the error by asking the defendant whether he had ever told anybody, including his lawyer, that he was at his brother's apartment, miles from the crime scene. Not only was this line of questioning prohibited under Deatore, it also was an obvious, impermissible invasion of the attorney-client privilege. Evid.R. 26(1).
There are reasons why silence at or near the time of arrest may not only be golden, but eminently prudent. As Chief Justice Hughes pointed out in Deatore, 70 N.J. at 117):
... There are many reasons why a person in such a situation may choose to say nothing. A likely explanation is conscious reliance on his right to remain silent. Another is a general feeling that it is better not to say anything at all when surrounded by police or officials in a fearful atmosphere. Still another, in the case of an alibi, might be the simple lack of immediate recollection of the defendant as to his whereabouts at the time of the occurrence.
For reasons already expressed by the majority and myself, the right to remain silent immediately following arrest is inviolate. That right, whether viewed as common law in origin or constitutional in dimension, has little, if anything, to do with the inordinately late assertion of an alibi defense.
As the majority points out at 28, R. 3:11-1 does not compel the defendant to disclose his whereabouts at the time of the commission of the offense for which he stands *34 accused. However, when he intends to rely upon an alibi, after demand of the prosecutor, he must disclose his whereabouts and the names of his witnesses. R. 3:11-1 requires that this information be provided not later than ten days after the prosecutor's written demand therefor, or such other time as the trial judge permits in the interest of justice. Failure to furnish such information permits the court to bar the alibi defense (R. 3:11-2), even if offered by the testimony of defendant himself. State v. Francis, 128 N.J. Super. 346, 351-352 (App.Div. 1974). The constitutionality of notice of alibi rules has been upheld. Williams v. Florida, 399 U.S. 78, 85, 90 S.Ct. 1893, 1898, 26 L.Ed.2d 446, 452 (1970); State v. Angeleri, 51 N.J. 382, 385 (1968), cert. den. 393 U.S. 951, 89 S.Ct. 372, 21 L.Ed.2d 362 (1968). Of course, the informed and realistic prosecutor knows that our courts will rarely invoke the drastic sanction of prohibiting an alibi defense. State v. Caffee, 220 N.J. Super. 34, 37-38 (App.Div. 1987), certif. den. 107 N.J. 640 (1987).
We should not confuse the right to remain silent with the obligation to provide alibi information within a reasonable time after it is demanded by the State. In February 1984, defendant was served with a bill of particulars, pursuant to R. 3:11-1. Thirteen months later, on March 8, 1985  just three days before the trial began  defendant provided the prosecutor with the required answers to this bill of particulars. There should be no absolute rule prohibiting the prosecutor from questioning the defendant about the reason for such a long delay, and preventing summation argument to the jury that this delay is evidence of a recent fabrication of the alibi defense.
Obviously, the late filing of an alibi bill of particulars should not automatically permit the prosecutor to assert the claim of recent fabrication. Each situation should be dealt with on a case-by-case basis. A prosecutor who wishes to attack defendant's late alibi on the grounds that it is of recent fabrication should so advise the trial judge out of the jury's presence. The dispute as to what, if anything, is admissible, can then be resolved upon an offer of proof. Evid. R. 8(1).
NOTES
[1] The Notice of Alibi listed three witnesses whose statements were ordered to be provided to the State.
[2] At this point, the trial judge informed the jury that "while the burden of proof is upon the State in all respects, if a defendant is to plead alibi, he is required to give notice to the State in advance of trial by filing a written document setting forth where he was at, what times, so that the State has a fair opportunity to investigate that defense and if they find it true, to dismiss the case or if they have reason to believe it is untrue to establish whatever it is they choose to establish. It is required under the rule and that is the copy that we now have."
[3] Miranda v. Arizona, 384 U.S. 436, 444-445, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] The violation was compounded by the questioning of the trial judge, in attempting to clarify the prosecutor's inquiry, as to defendant's failure to have disclosed his alibi defense during any of his pretrial court appearances.