786 A.2d 128 (2001)
345 N.J. Super. 571
STATE of New Jersey, Plaintiff-Respondent,
v.
George TILGHMAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 27, 2001.
Decided December 13, 2001.
*129 Peter A. Garcia, Acting Public Defender, attorney for appellant (Alan I. Smith, Designated Counsel, on the brief).
John J. Farmer, Jr., Attorney General, attorney for respondent (Linda A. Rinaldi, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and PARRILLO.
PER CURIAM.
Following a trial by jury, defendant George Tilghman was convicted of a charge of second-degree robbery, N.J.S.A. 2C:15-1, and a related charge of third-degree burglary, N.J.S.A. 2C:18-2a(1). He was sentenced on the robbery charge to an extended term of twenty years subject to an eight-year term of parole ineligibility, and, on the burglary charge, to a concurrent five-year term. Required statutory penalties were also imposed. Defendant appeals, and we reverse on the ground of prosecutorial misconduct.
The gravamen of the crimes charged against defendant arose out of the robbery, in her home, of the seventy-four year old victim during the late evening of December 14, 1998. She had arrived home at about 10 p.m., parked her car in her driveway, and was accosted by her assailant as she was entering the house. Her assailant pushed her into the house, stole her purse and fled when he heard the alarm of her car, which she was able to activate as she was still holding her car key. The victim summoned the police and gave them a description of the assailant. Believing that defendant, who was known to the police, fit that description, the officer included his picture in a photographic array. The victim identified defendant, who was arrested four days later. The sole witnesses for the State at trial were the victim and the officer. Defendant produced no evidence, his defense resting on the assertion of mistaken identification by the victim. The jury, however, evidently accepted the victim's testimony.
In challenging the judgment of conviction, defendant raises the following issues:
I. VICTIM IMPACT APPEALS CONCERNING SENIOR CITIZENS AS VICTIMS OF CRIME MADE BY THE PROSECUTOR IN HER OPENING STATEMENT WERE IMPROPER AND DEPRIVED THE DEFENDANT *130 OF A FAIR TRIAL. (NOT RAISED BELOW)
II. TESTIMONY THAT DETECTIVE COLANDUONI HAD "PERSONAL KNOWLEDGE" OF DEFENDANT SUBSTANTIALLY PREJUDICED DEFENDANT'S RIGHT TO A FAIR TRIAL BECAUSE IT WAS NOT RELEVANT TO ANY MATERIAL ISSUE AND BECAUSE IT CLEARLY SUGGESTED THAT DEFENDANT HAD A PRIOR CRIMINAL RECORD. (NOT RAISED BELOW)
III. THE PROSECUTOR'S COMMENTS IN SUMMATION DEPRIVED THE DEFENDANT OF HIS RIGHT TO A FAIR TRIAL. (NOT RAISED BELOW)
IV. IMPOSITION OF AN EXTENDED TERM SENTENCE OF TWENTY (20) YEARS WITH EIGHT (8) YEARS OF PAROLE INELIGIBILITY ON DEFENDANT'S CONVICTION FOR ROBBERY (COUNT TWO) WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF THE SENTENCING COURT'S DISCRETION.
A. THE COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO AN EXTENDED TERM.
B. IMPOSING A BASE SENTENCE OF TWENTY (20) YEARS WITH EIGHT (8) YEARS OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF THE COURT'S DISCRETION.
We address first the claim of prosecutorial misconduct in the summation. After discussing the identification evidence, the prosecutor had this to say:
But if that was not enough, let's look at the conduct briefly of George Tilghman. He is arrested in his home. Very calmly asks, what is this all about? He is in front of his brother and sister. The detective looks at George Tilghman, and I guess out of some respect for privacy says, it is up to you, do you want them to know? Well, yeah, I'd like to know, too. The officer tells him that he has an arrest warrant charging robbery, for the robbery of an elderly woman, four nights ago, December 14th, on Monday.
What is the reaction? One of shock? One of horror? One that you would expect of someone had not committed such an awful crime and knew exactly where they were? No, none of that. But what did you get? That is a heck of a way to spend the holidays. That was his reaction. I submit to you, that was his way of saying, his way of realizing, and saying without thinking, I just got busted.

* * * * * *
If that is not enough, the positive identification, the same garment being worn, then we have what happens at police headquarters. Sitting, again, calmly in an interview room, going over the Miranda form, I'll leave that again to your common sense, someone was just told that they were arrested for a crime that they absolutely didn't commit, would they calmly be sitting in an interview room at a chair and table or would they literally and figuratively be climbing the walls because in this case he was not?
These remarks were followed by the prosecutor's statement to the jury regarding the interrogation of defendant that did ensue. According to the prosecutor, when defendant perceived that his "alibi didn't *131 work," he told the interrogating officer "I don't want to talk anymore, give me a lawyer...."
We recognize that there was no objection to these remarks at trial and hence that the asserted error must be evaluated by the plain-error standard, namely whether the misconduct was so egregious in the context of the summation as a whole as to deprive defendant of a fair trial. See, e.g., State v. Smith, 167 N.J. 158, 181-182, 770 A.2d 255 (2001); State v. Frost, 158 N.J. 76, 83, 87-89, 727 A.2d 1 (1999). We are constrained to conclude that the prosecutor's remarks met that standard.
The prosecutor is accorded considerable latitude in summing up the State's case forcefully and graphically and to pursue the prosecutorial duty with earnestness and vigor. See, e.g., State v. Smith, supra, 167 N.J. at 177, 770 A.2d 255 (2001); State v. Frost, supra, 158 N.J. at 82, 727 A.2d 1; State v. Harvey, 151 N.J. 117, 216, 699 A.2d 596 (1997). Nevertheless, prosecutors also have the overriding obligation to see that justice is fairly done. The classic statement of that obligation by the United States Supreme Court in Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L. Ed. 1314, 1321 (1935), explains that:
The * * * [prosecuting] Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.
See also State v. Rose, 112 N.J. 454, 509, 548 A.2d 1058 (1988); State v. Gregg, 278 N.J.Super. 182, 190, 650 A.2d 835 (App.Div.1994), certif. denied, 140 N.J. 277, 658 A.2d 300 (1995); State v. Acker, 265 N.J.Super. 351, 355-356, 627 A.2d 170 (App.Div.), certif. denied, 134 N.J. 485, 634 A.2d 530 (1993).
We are persuaded that the prosecutor struck foul blows. She offered as proof of defendant's guilt the victim's identification, defendant's post-arrest silence, and his request for a lawyer. Obviously, however, neither post-arrest silence nor a request for a lawyer is even admissible, and, just as obviously, neither is, a fortiori, probative of guilt. With respect to post-arrest silence, we recently reiterated the governing constitutional principle prohibiting a prosecutor from commenting on defendant's post-arrest silence. Thus, in State v. Pierce, 330 N.J.Super. 479, 492, 750 A.2d 139 (App.Div.2000), we again emphasized that:
No inculpatory inference may be permissibly drawn from a defendant's decision to remain silent following his arrest. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L. Ed.2d 91 (1976); State v. *132 Lyle, 73 N.J. 403, 416, 375 A.2d 629 (1977); State v. Deatore, 70 N.J. 100, 115, 358 A.2d 163 (1976); State v. Aceta, 223 N.J.Super. 21, 28, 537 A.2d 1317 (App.Div.1988). We stated in State v. Hyde, 292 N.J.Super. 159, 160, 678 A.2d 717 (App.Div.1996), that "silence will carry no penalty," and our Supreme Court held over two decades ago that:
a defendant is under no obligation to volunteer to the authorities at the first opportunity the exculpatory story he later tells at his trial and cannot be penalized directly or indirectly if he does not.
[State v. Deatore, supra, 70 N.J. at 115, 358 A.2d 163.]
See also State v. Pepshi, 162 N.J. 490, 493, 745 A.2d 494 (1999) in which the Court made clear that apparent indifference to arrest or acceptance of police conduct are not indicative of a consciousness of guilt.
The prosecutor's protracted remarks here respecting defendant's post-arrest silence and her invitation to the jury to infer guilt therefrom were egregious and inexcusable. Not less so was her observation that defendant requested an attorney when, as she suggested, he perceived that his "alibi didn't work." Again, what she was doing was inviting the jury to infer guilt from the request for an attorney. And that is plainly an infringement of defendant's constitutional right to counsel. See State v. Feaster, 156 N.J. 1, 75-76, 716 A.2d 395 (1998), holding that while the trial should be free of any reference to a criminal defendant's invocation of the right to counsel, such references will not constitute reversible error if their import is other than to suggest to the jury that it draw a negative inference from the invocation. We are, however, satisfied that here the reference had both that purpose and that effect.
We are, for these reasons, persuaded that the summation itself warrants a reversal here. In State v. Watson, 224 N.J.Super. 354, 362, 540 A.2d 875 (App.Div.), certif. denied, 111 N.J. 620, 546 A.2d 537, cert. denied, 488 U.S. 983, 109 S.Ct. 535, 102 L. Ed.2d 566 (1988), Judge Baime noted that "[w]e would be remiss, however, were we to fail to note that instances of prosecutorial excesses in the course of summation seem to come to this court with numbing frequency." We repeated that observation in State v. Acker, supra, 265 N.J.Super. at 355, 627 A.2d 170, and the Supreme Court reiterated it in State v. Frost, supra, 158 N.J. at 88, 727 A.2d 1. While the Supreme Court in State v. Frost rejected a per se rule of reversible error, we are confident that that rejection was not intended as a license to prosecutors to say anything at all to the jury, no matter how prejudicial, that they think might sway it towards a conviction. Although we reverse the conviction only when, as here, the prosecutorial misconduct is prejudicial and egregious, we again remind the prosecutors that their obligation demands appropriate restraint in every case.
We need comment only briefly on defendant's appellate challenge to the prosecutor's remarks both on the opening statement and in summation in which she discussed the social problem posed by the vulnerability of elderly victims who are preyed upon by the young and strong, referring to defendant as "a perfect example" of a person who preys upon the elderly. These remarks came perilously close to, if indeed they did not constitute, a plea to the jury to protect the elderly as a group, just the type of comment we strongly criticized in State v. Acker, supra, 265 N.J.Super. at 356, 627 A.2d 170, in which we found reversible error in the prosecutorial statement that it was the jury's function to protect young victims of *133 alleged sexual offenses "as a group." See also State v. Kenny, 128 N.J.Super. 94, 110-111, 319 A.2d 232 (App.Div.1974), aff'd, 68 N.J. 17, 342 A.2d 189 (1975), criticizing the prosecutor's continual references to the modus operandi of Hudson County corruption in general in the trial of a freeholder on a specific charge. On retrial, the prosecutor must remember that defendant has been charged with a specific crime which the State must prove beyond a reasonable doubt and that he is not on trial as the exemplar of a particular social problem.
Finally, defendant now objects to the prosecutor's examination of the police officer eliciting his testimony that when he heard the victim's description, he suspected that the assailant was defendant because he knew him. Defendant argues that although the testimony appears to be neutral on its face, its implication is that the officer knew defendant because of defendant's prior criminal conduct. The testimony was given to explain why defendant's photograph was included in the array. We are of the view that that testimony was not necessary to the proofs respecting the victim's identification, and, if anything improperly bolstered it by letting the jury know that the victim had chosen the photograph of the person the officer already suspected. We recognize that the officer's testimony did not involve the hearsay information problem dealt with in State v. Bankston, 63 N.J. 263, 307 A.2d 65 (1973), or its consequent holding that all that need be said, if anything need be said, is that the officer acted on information obtained. Nevertheless, we are persuaded that since there was no legitimate need for an explanation of why defendant's picture was included in the array, it was improper to elicit the testimony and thereby to risk the inference that the jury would assume that defendant had prior criminal contact with the police.
Since the matter must be retried, we need not address defendant's claim that the sentence was excessive. He will have to be resentenced if again convicted, and we are confident that the trial court, if it again elects to impose an extended term based on defendant's status as a persistent offender, will follow the procedure prescribed by State v. Dunbar, 108 N.J. 80, 527 A.2d 1346 (1987), and make all the required findings.
The judgment of conviction is reversed, and we remand for a new trial.