NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3222-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

 v.

JOSEPH BUNDY, JR., a/k/a
JOSEPH BUNDY,

 Defendant-Appellant.
____________________________________________________

 Submitted May 9, 2017 – Decided June 28, 2017

 Before Judges Fisher, Ostrer and Moynihan.

 On appeal from Superior Court of New Jersey,
 Law Division, Salem County, Indictment No. 13-
 05-0273.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Margaret McLane, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 John T. Lenahan, Salem County Prosecutor,
 attorney for respondent (Derrick Diaz,
 Assistant Prosecutor, of counsel and on the
 brief).

 Appellant filed a pro se supplemental brief.

PER CURIAM

 In this appeal, defendant argues, among other things, the

trial judge erred in imposing consecutive prison terms for his
reckless manslaughter and unlawful possession of a firearm

convictions. We agree the judge's Yarbough1 analysis does not

support consecutive terms and for that and other reasons, we remand

for resentencing.

 Defendant was charged, in connection with a shooting, with:

first-degree murder, N.J.S.A. 2C:11-3(a); second-degree unlawful

possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-

4(a); second-degree unlawful possession of a firearm, N.J.S.A.

2C:39-5(b); second-degree aggravated assault, N.J.S.A. 2C:12-

1(b)(1); and third-degree aggravated assault, N.J.S.A. 2C:12-

1(b)(2). At the conclusion of a trial, a jury acquitted defendant

of murder, aggravated manslaughter, and possession of a weapon for

an unlawful purpose, but convicted him of the lesser-included

offense of second-degree reckless manslaughter, second-degree

unlawful possession of a weapon, second-degree aggravated assault,

and the lesser-included disorderly persons offense of simple

assault with a deadly weapon. Defendant was sentenced to an eight-

year prison term – with an eighty-five percent parole disqualifier

– on the reckless manslaughter conviction to run consecutively to

an eight-year prison term with four years of parole ineligibility

1
 State v. Yarbough, 100 N.J. 627, 643-44 (1985), cert. denied,
475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986).

 2 A-3222-14T2
on the unlawful possession of a firearm conviction. The trial

judge also ordered $5,720 in restitution.

 Defendant appeals, arguing:

 I. THE FAILURE TO REDACT DEFENDANT'S
 INVOCATION OF HIS RIGHT TO COUNSEL FROM HIS
 RECORDED STATEMENT PLAYED FOR THE JURY, OR AT
 LEAST PROVIDE LIMITING INSTRUCTION, DEPRIVED
 DEFENDANT OF A FAIR TRIAL AND REQUIRES
 REVERSAL OF HIS CONVICTIONS (Not Raised
 Below).

 II. THE PROSECUTOR'S SUMMATION UNFAIRLY
 DENIGRATED DEFENSE COUNSEL AND SHIFTED THE
 BURDEN OF PROOF, DEPRIVING DEFENDANT OF HIS
 FAIR TRIAL AND REQUIRING REVERSAL OF HIS
 CONVICTION.

 III. DEFENDANT'S SENTENCE IS EXCESSIVE AND
 MUST BE VACATED BECAUSE THE COURT MISAPPLIED
 YARBOUGH, FAILED TO ADDRESS MITIGATING
 FACTORS, IMPROPERLY FOUND AGGRAVATING FACTOR
 6, AND IMPOSED RESTITUTION WITHOUT EVALUATING
 DEFENDANT'S ABILITY TO PAY.

Defendant also submitted a pro se letter brief in which he argues:

 IV. THE TRIAL JUDGE ABUSED HIS DISCRETION BY
 PERMITTING A PHYSICIAN TO RENDER AN
 INDEPENDENT OPINION AND TESTIFY AS TO THE
 CAUSE OF DEATH OF THE VICTIM BASED ON AUTOPSY
 PHOTOGRAPHS, AND THE NOTES OF ANOTHER
 [2]
 PHYSICIAN.

We address these arguments separately.

2
 We have renumbered these arguments and reworded defendant's pro
se argument into a succinct point heading.

 3 A-3222-14T2
 I

 Defendant first contends that his invocation of the right to

counsel should have been redacted from the recorded statement he

gave to police when played for the jury. He argues this

circumstance deprived him of a fair trial.

 Because defendant raises this issue for the first time on

appeal, we apply the plain error standard and will not reverse

unless the error was "of such a nature as to have been clearly

capable of producing an unjust result." R. 2:10-2. In the context

of a jury trial, relief will be afforded when the possibility of

an unjust result is "sufficient to raise a reasonable doubt as to

whether the error led the jury to a result it otherwise might not

have reached." State v. Macon, 57 N.J. 325, 336 (1971).

 At trial, the State played for the jury the entirety of

defendant's recorded statement to police. At the statement's end,

defendant invoked the right to counsel:

 A: Well you ain't going to believe me do you
 want me to get a lawyer?

 Q: Do you need one?

 A: You aren't going to believe me.

 A: I'm not going to risk my whole life
 (indiscernible) to you, you all saying one
 thing and got other people coming in saying
 another. No. I'll call my dad and we'll get a
 lawyer. Got to[o] much on the line
 (indiscernible).

 4 A-3222-14T2
 Q: You said a mouthful there, you got too much
 on the line to be taking any chances, you're
 right so if you want a lawyer obviously,
 that’s your choice.

 A: (Indiscernible) fucking lawsuit
 (indiscernible) at least I'm fuck
 (indiscernible). You people won't believe me.

Defendant argues "[t]he court's failure to exclude [this] portion

of [defendant's] statement, or at a minimum provide a jury

instruction about the invocation, was clearly capable of producing

an unjust result . . . and deprived him of a fair trial."

 Admission of testimony that defendant "desire[d] or

request[ed] . . . a lawyer is impermissible[,]" United States v.

Williams, 556 F.2d 65, 67 (D.C. Cir.), cert. denied, 431 U.S. 972,

97 S. Ct. 2936, 53 L. Ed. 2d 1070 (1977), and "trial courts should

endeavor to excise any reference to a criminal defendant's

invocation of his right to counsel," State v. Feaster, 156 N.J.

1, 75 (1998), because it might be viewed by jurors as suggestive

of guilt, State v. Tilghman, 345 N.J. Super. 571, 576-77 (App.

Div. 2001). This circumstance, however, does not always lead to a

finding of plain error. In Feaster, the Court found an invocation

of the right to counsel was erroneously heard by the jury but,

because of its "fleeting" nature, because the prosecutor did not

comment on it during his summation, because instructions were

given that barred the jury from drawing negative inferences as a

 5 A-3222-14T2
result, and because defense counsel did not request further jury

instructions, the Court determined that the admission of the

invocation did not constitute plain error. Feaster, supra, 156

N.J. at 77. The facts of this case require the same result.

 Defense counsel did not object to the jury hearing that

portion of the recorded statement. He did not ask that it be

stricken from the record once it was played. He did not seek

limiting or cautionary jury instructions. The prosecutor made no

mention of the invocation during closing statements. And

defendant's invocation of his right to counsel was heard at the

end of a statement that exceeded two hours during which defendant

professed his innocence multiple times and only when it seemed to

him the police didn't believe him. Just as was held in Feaster in

similar circumstances, we conclude the "jury was unlikely to have

drawn any unfavorable inferences against defendant that

jeopardized his fundamental right to a fair trial." Feaster, supra,

156 N.J. at 77.

 II

 Defendant claims the prosecutor's summation exceeded the

bounds of propriety by (a) denigrating defense counsel and (b)

improperly shifting the burden of proof to the defense. We find

insufficient merit to warrant discussion in a written opinion. R.

 6 A-3222-14T2
2:11-3(e)(2). We add only the following brief comments on each

aspect of this argument.

 A

 Defendant argues that the prosecution denigrated defense

counsel by suggesting his goal was "to create confusion." This

comment was certainly objectionable but we conclude not "so

egregious that it deprived a defendant of a fair trial". State v.

Frost, 158 N.J. 76, 83 (1999).

 To warrant reversal, a prosecutor's conduct must have

"substantially prejudiced defendant's fundamental right to have a

jury fairly evaluate the merits of his defense." State v.

Timmendequas, 161 N.J. 515, 575 (1999), cert. denied, 534 U.S.

858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). "In determining

whether prosecutorial misconduct is prejudicial and denied

defendant a fair trial, we consider whether defense counsel made

a timely and proper objection, whether the remark was withdrawn

promptly, and whether the court ordered the remarks stricken from

the record and instructed the jury to disregard them." State v.

Ramseur, 106 N.J. 123, 322-23 (1987). If counsel does not object

at trial, "the remarks usually will not be deemed prejudicial."

Id. at 323.

 7 A-3222-14T2
 The prosecutor's comment that defense counsel was attempting

to create confusion was not "of such a nature as to have been

clearly capable of producing an unjust result." R. 2:10-2. The

record shows defense counsel did not object, and the trial judge

reminded the jurors in both his initial instructions and the final

charge that they are the sole judges of fact, including witness

credibility, and that summations are not evidence and should not

be treated as such.

 B

 The second claim of prosecutorial misconduct requires some

background information.

 The prosecution offered into evidence surveillance footage

showing defendant entering an apartment complex in close proximity

to where the shooting occurred. In that footage, defendant appeared

to be wearing a white shirt. Later, defendant voluntarily

approached the police to clear his name. When then questioned

about his attire, defendant asserted he was wearing a black shirt

the night of the shooting. At trial, however, defendant testified

he was wearing a white shirt the night of the shooting. During his

closing statement, the prosecutor referred to defendant's

conflicting accounts and rhetorically asked, "[w]here's the white

shirt," arguably conveying that defendant failed to explain this

 8 A-3222-14T2
inconvenient circumstance. Defendant argues that, in this way, the

prosecutor was able to "shift the burden of proof." Following the

prosecutor's argument on this point,3 defense counsel objected,

and the judge correctly struck from the record any reference that

the prosecution made to the shirt in his summation. The judge

further directed the jury "not [to] consider it for any purpose."

The judge reiterated that defendant "has no obligation or duty to

prove his innocence or offer any proof relating to his innocence",

and that the "State has the burden of proving [defendant's] guilt

beyond a reasonable doubt."4

 The prosecutor's comment was not "of such a nature as to have

been clearly capable of producing an unjust result," R. 2:10-2,

because the comment was swiftly stricken and the jury thoroughly

instructed against considering it. This eliminated any potential

for prejudice.

3
 The entire passage in question is as follows:

 The black/white shirt thing. When he was first
 interviewed, [defendant] didn't know we had a
 video. [Defendant] said, "I was wearing a
 black shirt." Why would he say that? Was there
 something on that white shirt that he didn't
 want the police to know? . . . I'll throw
 something at you just like [defense counsel]
 threw at you. Where's the white shirt?
4
 Juries are presumed to understand and follow a trial judge's
instructions. State v. Loftin, 146 N.J. 295, 390 (1996); State v.
Manley, 54 N.J. 259, 271 (1969).

 9 A-3222-14T2
 III

 Defendant appeals the sentence imposed.

 Our review of a sentence is "relatively narrow" and governed

by an abuse of discretion standard. State v. Blackmon, 202 N.J.

283, 297 (2010). Consequently, we are tasked only with determining,

"whether the correct sentencing guidelines [were] followed,"

whether "there is substantial evidence in the record to support

the findings of fact upon which the sentencing court based the

application of those guidelines," and "whether in applying those

guidelines to the relevant facts the trial court clearly erred by

reaching a conclusion that could not have reasonably been made

upon a weighing of the relevant factors." State v. Roth, 95 N.J.

334, 365-366 (1984).

 As we have observed, defendant was sentenced to an eight-year

prison term – with an eighty-five percent parole disqualifier –

on the reckless manslaughter conviction; that term was ordered to

run consecutively to an eight-year prison term subject to a four-

year period of parole ineligibility on the unlawful possession of

a firearm conviction. Defendant contends the judge erred: (a) by

imposing consecutive terms; (b) by failing to address mitigating

factors and erroneously finding aggravating factor six; and (c)

by ordering restitution without evaluating defendant's ability to

pay.

 10 A-3222-14T2
 A

 Defendant argues that the judge misapplied Yarbough, which

provides a series of factors to consider when choosing between the

imposition of concurrent or consecutive sentences. 100 N.J. at

643-44. At sentencing, the judge analyzed the Yarbough factors

individually and concluded the sentence of unlawful possession of

a weapon should run consecutive to the sentence imposed for the

manslaughter offense by reasoning that:

 The crimes and their objectives were
 predominately independent of each other. The
 crime of unlawful possession of a weapon, the
 purpose of it is to possess a weapon without
 being legally entitled to do so. The reckless
 conduct towards [the victim] which resulted
 in his death.

 They involve separate acts . . . [and] were
 at different times. The unlawful possession
 of the weapon goes back to the nexus of the
 time when [defendant] obtained the weapon
 unlawfully from someone on the street, as
 opposed to [the shooting that occurred later].
 I recognize that they are sort of in the same
 24-hour period, but at a later time when he
 confronted [the victim] in the early hours of
 the next morning.

 There aren't multiple victims here because the
 unlawful possession of a weapon is – it's
 victimless in a sense that it – doesn’t
 require [defendant] to do something to
 someone, so I would say that that factor is
 inapplicable.

 And we're imposing sentences on two different
 offenses. Our system requires that there be

 11 A-3222-14T2
 no free crimes; that the punishment should fit
 the crime. There should be no double-counting.
 I would suggest that there are none . . . in
 what I am doing now.

 In State v. Copling, 326 N.J. Super. 417, 440-42 (App. Div.

1999), cert. denied, 164 N.J. 189 (2000), we found erroneous the

imposition of consecutive sentences for murder, manslaughter and

unlawful possession of a weapon convictions, because "[t]he

objective and purpose" of the unlawful possession statute is

similar to that of the murder statute.

 In Copling, we recognized that the objective and purpose of

the unlawful possession statute "is to protect others from being

killed by those who own weapons" and "[t]here is a strong

legislative policy in this State with respect to gun control,

designed to protect the public, which places restrictions on those

who may carry such weapons and is intended to prevent criminal and

other unfit elements from acquiring and possessing them." Ibid.

(quoting State v. Wright, 155 N.J. Super. 549, 553 (App. Div.

1978)). We also recognized the "purpose of the murder statute is

obviously to protect the public and individuals from unlawful

killing." Ibid. Consequently, we concluded that the statutes were

intended to protect the same class of victims – in short, society

as a whole. So viewing the purposes of these statutes – a view

 12 A-3222-14T2
that eliminated one of the Yarbough factors found by the trial

judge – we remanded in Copling for resentencing.

 The facts here are similar. Defendant was convicted of

reckless manslaughter, a lesser-included offense of murder, and

unlawful possession of a weapon. The trial judge erred by

determining "the crimes and their objectives were predominantly

independent of each other," Yarbough, supra, 100 N.J. at 643-44,

a conclusion inconsistent with our holding in Copling. Because,

like Copling, only two of the five Yarbough factors applied here,

we remand for resentencing at which time the judge may not impose

consecutive prison terms.

 B

 At sentencing, defense counsel requested the judge's

consideration of "mitigating factors three, four, five, seven, and

eight."5 Despite this request, the trial judge made no mention of

5
 These mitigating factors apply when:

 (3) The defendant acted under a strong
 provocation;

 (4) There were substantial grounds tending to
 excuse or justify the defendant's conduct,
 though failing to establish a defense;

 (5) The victim of the defendant's conduct
 induced or facilitated its commission;

 13 A-3222-14T2
them. Instead, the judge addressed and properly weighed

"aggravating factors three, six and nine," and he also properly

gave weight to "mitigating [factor] ten."6 After creating a record

on these factors – but without addressing mitigating factors three,

four, five, seven, and eight – the trial judge concluded the

"aggravating factors substantially outweigh the mitigating

factors."

 On remand for resentencing, and in order "[t]o facilitate

meaningful appellate review," State v. Case, 220 N.J. 49, 65

(2014), the judge should address the mitigating factors that were

urged by the defense but as to which the judge made no reference.

Blackmon, supra, 202 N.J. at 297. We offer no view about these

factors only that, once invoked, the judge was obligated to give

a rationale for his view of their applicability or lack thereof.

Without such an explanation, we cannot determine whether the judge

 (7) The defendant has no history of prior
 delinquency or criminal activity or has led a
 law-abiding life for a substantial period of
 time before the commission of the present
 offense; [and]

 (8) The defendant's conduct was the result of
 circumstances unlikely to recur.

 [N.J.S.A. 2C:44-1(b)(3)-(8)].
6
 The trial judge concluded that "[t]he defendant is particularly
likely to respond affirmatively to probationary treatment,"
N.J.S.A. 2C:44-1b(10).

 14 A-3222-14T2
erred with respect to any mitigating factor that was not found or

applied.

 C

 Defendant argues the trial judge erred by ordering that

defendant pay $5,720 in restitution without first conducting an

ability-to-pay hearing. Defendant argues, and the State agrees,

that due process requires that such a hearing be conducted when

there is a good faith dispute about a defendant's ability to pay.

State v. Martinez, 392 N.J. Super. 307, 319-22 (App. Div. 2007);

State v. Jamiolkoski, 272 N.J. Super. 326, 329 (App. Div. 1994).

 At the sentencing hearing on January 9, 2015, defendant agreed

to the judge's holding off on the issue of restitution until a

later date. On March 5, 2015, however, and without conducting a

hearing, the trial judge ordered restitution in the amount of

$5,720. Although the State agrees with defendant's position that

due process requires a hearing when there is a dispute about a

defendant's ability to pay, the State argues there was no dispute

about the amount. That may be true, but it does not address whether

defendant had the ability to pay that amount.

 In resentencing defendant, the judge should conduct an

ability-to-pay hearing.

 15 A-3222-14T2
 IV

 Defendant, in his pro se submission, raises another issue.

He argues the trial judge erred by permitting an expert to render

an independent opinion and to testify about the cause of death

through consideration of autopsy photographs and the notes of

another expert. We find insufficient merit to warrant discussion

in a written opinion. R. 2:11-3(e)(2). We add only the following

brief comments.

 Since this issue is raised for the first time on appeal, we

apply the plain error standard, R. 2:10-2, which precludes reversal

unless the error "is of such a nature as to have been clearly

capable of producing an unjust result." Ibid.

 The State called Dr. Gerald Feigin, Salem County's medical

examiner, to testify about the victim's cause of death. The parties

stipulated Dr. Feigin was an expert in forensic pathology, but Dr.

Feigin did not conduct the autopsy; instead, he reviewed the

medical report of the pathologist who conducted the autopsy,

examined photographs of the autopsy, and considered the other

pathologist's notes. Dr. Feigin concluded that the victim died of

a "gunshot wound to the chest and that the bullet caused damage

 16 A-3222-14T2
by passing through the heart and liver, causing massive bleeding."

He also concluded "the manner of death is homicide."7

 Although a prosecutor's use at trial of a medical examiner

who did not perform the autopsy may in different circumstances

prove problematic, see State v. Bass, 224 N.J. 285, 291-92 (2016),

Dr. Feigin did not rely on the non-testifying expert's report or

conclusions; he gave his own opinion based on material of the type

normally considered by experts, and he reached his own conclusion

about the mechanics of death. In addition, no harm resulted because

the issue at trial was whether defendant shot the victim, not

whether the victim died of a gunshot wound.

 We affirm defendant's convictions. We reverse defendant's

consecutive sentence and remand for an ability-to-pay hearing and

for resentencing in conformity with this opinion. We do not retain

jurisdiction.

7
 This last comment represented an improper legal opinion. But
there was no objection, and the propriety of this legal opinion
has not been raised here, so we need not consider whether the Dr.
Feigen's declaration that defendant was the victim of a "homicide"
was erroneous.

 17 A-3222-14T2