**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0743-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PATRICK MCFARLANE,

     Defendant-Appellant.

_____

     Submitted January 19, 2021 – Decided February 9, 2021

     Before Judges Sabatino, Currier and DeAlmeida.

     On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 09-06-0574.

     Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel and on the briefs).

     Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Laura Sunyak, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Patrick McFarlane appeals the trial court's denial of his petition for post-conviction relief ("PCR") without an evidentiary hearing. We affirm.

This is the pertinent background. After a 2013 jury trial, defendant was found guilty of murder, felony murder, armed robbery, and a weapons offense. The State's proofs showed that on the night in question defendant and Roderick Armstrong approached a group of men who were outdoors in Trenton playing dice. Defendant was armed with a gun and pointed it at the dice players, seeking to rob them. The dice players attempted to flee.

Defendant and Armstrong chased one of the players, Richard Mason, who defendant shot at multiple times and hit once in the back. Mason died shortly thereafter. Defendant stole some of his belongings. After the event, defendant was seen with a teardrop tattoo on his face, which, according to testimony given at trial, was meant to memorialize the murder of Richard Mason.

Armstrong testified for the State at defendant's trial pursuant to a plea agreement, and incriminated defendant. Defendant argued at trial he had been misidentified. The jury convicted defendant on all four counts of the indictment.

The trial court imposed a sixty-year custodial term on the murder count, subject to an eighty-five percent parole ineligibility period under the No Early

A-0743-19

Release Act ("NERA"), N.J.S.A. 2C:43-7.2, and a concurrent twenty-year custodial term on the robbery count.

This court affirmed defendant's conviction and sentence on direct appeal. State v. McFarlane, No. A-1887-13 (App. Div. Apr. 13, 2015). The Supreme Court declined to grant certification on the conviction, but did remand the matter for resentencing. State v. McFarlane, 224 N.J. 458 (2016). On resentencing, the trial court imposed substantially the same sentence, which our court affirmed in an order in December 2017 on the excessive sentencing calendar. The Supreme Court subsequently denied certification on that matter. State v. McFarlane, 234 N.J. 3 (2018).

In his PCR application, defendant argued his trial and appellate counsel were ineffective in various respects. His main argument was that trial counsel should have urged the trial judge to make further inquiry during voir dire of a juror, L.P., whose brother was employed as a corrections officer at the Mercer County Jail where defendant was being housed. He contends his appellate counsel was deficient in not raising this juror point on direct appeal. Defendant further argued that trial counsel should have pursued a possibility that a man named Paul Owens was the killer because Owens was seen trying to enter a red Kia automobile near the crime scene, should have insisted on DNA testing on a

sweatshirt found inside of the Kia, should have interviewed a possible witness named Rodney Diggs, and other miscellaneous alleged deficiencies. In addition, he asserts that appellate counsel should have raised on appeal issues with respect to testimony by Police Detective Anthony Abarno based upon trial counsel's initial objections.

After hearing oral argument, Judge Timothy Lydon issued an eighteen-page written opinion on August 23, 2019, rejecting defendant's PCR petition in all respects. The judge found no reason to conduct an evidentiary hearing.

In his present appeal, defendant makes the following points through his counsel:

> POINT ONE
>
> WHERE ISSUES OF POTENTIAL BIAS OR PREJUDICE ARISE DURING THE JURY SELECTION PROCESS IN A MURDER TRIAL, DEFENSE COUNSEL ERRED WHERE HE DID NOT INQUIRE WHETHER THE PROSPECTIVE JUROR COULD BE IMPARTIAL AND AS A RESULT PREVENTED THE ACCUSED FROM RECEIVING A FAIR TRIAL.
>
> POINT TWO
>
> APPELLATE COUNSEL HAS A DUTY TO PRESENT ON APPEAL NON-FRIVOLOUS ISSUES WHICH, AFTER EXAMINING THE RECORD, ARE THE MOST PROMISING FOR REVIEW AND THE

4

FAILURE TO DO SO AMOUNTS TO INEFFECTIVE ASSISTANCE.

POINT THREE

IN A CONSTITUTIONAL INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, PREJUDICE IS PRESUMED WHERE AN ATTORNEY DOES NOT QUESTION WHETHER A PROSPECTIVE JUROR CAN DISAVOW THE BIAS INHERENT IN A SITUATION WHERE A BROTHER WHO IS A CORRECTIONS OFFICER [IS] ASSIGNED TO THE FACILITY IN WHICH DEFENDANT WAS HOUSED BEFORE TRIAL.

POINT FOUR

THE PCR COURT ERRED WHERE IT DETERMINED THAT AN EVIDENTIARY HEARING WAS UNNECESSARY.

POINT FIVE

DEFENDANT INCORPORATES THE REMAINING ARGUMENTS RAISED BELOW IN SUMMARY FASHION.

Having fully considered these arguments in light of the applicable law, including the familiar two-part test of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (requiring a demonstration of counsel's deficient performance and actual prejudice caused by that conduct), we affirm the dismissal of defendant's PCR petition. We do so substantially for the sound reasons expressed by Judge Lydon. We add a few brief comments.

5

The central issue raised here concerns trial counsel's decision to allow Juror L.P. to remain on the jury, despite the fact that the juror's brother was employed as a corrections officer where defendant was being housed during the trial. Judge Lydon found that trial counsel's choice to not delve further into the juror's relationship with his brother was a "reasonable strategic decision." We concur.

The juror's responses during the voir dire process repeatedly evinced attitudes that criminal defense counsel would reasonably consider as indicative the juror was not biased in favor of the prosecution or law enforcement. The juror gave responses to voir dire questions on such themes as: his brother's employment, family members who have been victims of crime, family members who have been convicted of crimes, gun control laws, and his beliefs about the justice system.

For instance, the juror's response to question number fifteen went as follows:

> THE COURT: . . . Any other responses?
>
> [THE JUROR]: No. 15
>
> THE COURT: Okay. Who do you know who works for law enforcement?
>
> [THE JUROR]: My brother is a corrections officer.

6

A-0743-19

THE COURT: Where is he located?

[THE JUROR]: Mercer County workhouse.

THE COURT: How long has he worked there?

[THE JUROR]: He's been there for about four years.

THE COURT: All right. Any other responses?

[THE JUROR]: 18 and 19.

The juror then explained that both his other brother (not the corrections officer) and his cousin had been convicted of gun charges. Following up, the court asked: "did the criminal justice system treat your brother fairly?" The juror explained that he had not attended his brother's trial and he did not have "enough information to say either way." His response to the same question about his cousin was substantially similar.

Moreover, the juror attested that, as to his response to question number nineteen, he had relatives that had been victims of crimes. In particular, the juror stated he had "a couple of close relatives who were shot and shot at" within "about three years." When asked by the court, the juror responded "no" as to whether it "would be difficult for [him] to be fair and impartial" based on the allegations that defendant had shot someone. He further responded "correct"

7

when asked if he could "put aside what happened to your cousin's friends and decide this case clearly on the evidence produced in the courtroom?"

Based upon the juror's responses, the trial judge asked additional questions, as follows:

> [THE COURT]: Do you believe our criminal justice system is fair and effective and explain your answer?
>
> [THE JUROR]: Sometimes.
>
> THE COURT: And explain that sometimes?
>
> [THE JUROR]: Sometimes I believe the justice system gets it wrong, but other times I believe the people who practice law or who are in law enforcement could be more efficient and effective if they were more unbiased and fair.
>
> THE COURT: Okay. Do you have an opinion about our gun control laws?
>
> [THE JUROR]: I don't think people who are trained in guns should be the only ones who own them.
>
> THE COURT: And finally, why would you make a good juror in this type of criminal case?
>
> [THE JUROR]: I think I am a fair person.
>
> THE COURT: You can keep an open mind until you hear all the evidence, summations and my instructions?
>
> [THE JUROR]: Yes, Sir.

A-0743-19

The court then opened questioning to counsel for both parties. Defense counsel declined to ask any questions. The State asked the juror to explain his feelings about the criminal justice system a bit more. The juror responded by saying: "People who practice law and people who work in law enforcement, I feel if they were more fair and unbiased, then the justice system itself would be a lot more fair and impartial." The juror further explained that he thought the issue was "[i]n regard to racial profiling or just political."

After sidebar on the issue, the State asked whether the juror had specific incidents that he based his beliefs on. The juror responded: "I have a few incidents where I have just been pulled over for no apparent reason" in the states of New Jersey and New York, but not in Mercer County.

Before ending the voir dire, the court again asked if the juror thought he could be fair "knowing that one of the charges against this defendant is possession of a weapon for unlawful purpose" even though his brother had recently been convicted of the same offense. The juror answered, "I can be fair." Defense counsel again declined to ask any further questions, and the juror was seated without objection by either side.

Given this colloquy, we are satisfied that defendant's trial counsel was not constitutionally ineffective in opting to leave this juror in place. If anything, the

9

prosecution would have had an arguable basis to strike the juror given his personal experiences of unfair treatment and his expressed misgivings about aspects of the fairness of the criminal justice system. It was a reasonable strategic choice to not probe into these subjects in greater depth and possibly develop more grounds for the State to consider removing the juror. There is no competent proof that the juror ever spoke with his brother about defendant, even though defendant made such bare allegations in his pro se PCR petition.

In sum, the PCR court appropriately deferred to trial counsel's zone of strategic choice on this matter. Defendant has not overcome the strong presumption that his trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also State v. Pierre, 223 N.J. 560, 578-79 (2015). None of the cases cited by defendant concerning his right to a fair and impartial jury compel a different outcome here, given the juror's sworn responses to the court that repeatedly asserted he was not biased in favor of the prosecution.[1]

---

[1] Defendant's reliance on State v. Deatore, 70 N.J. 100 (1976) is particularly inapposite because that case involved a far different scenario in which a criminal trial judge refused to dismiss a juror for cause and declined defense counsel's request to delve into concerns about the juror's potential bias after she disclosed personally knowing the victim. Counsel in Deatore used a peremptory challenge to remove that juror, but the judge later refused to provide an additional

There was no need for the trial court to conduct an evidentiary hearing, as defendant failed to present a prima facie showing of a <u>Strickland</u> violation by either trial counsel or defendant's attorney on direct appeal. <u>State v. Preciose,</u> 129 N.J. 451, 462 (1992).

The balance of defendant's arguments were cogently addressed and rejected in the PCR judge's detailed opinion, and do not warrant further discussion here. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

peremptory challenge against other jurors who counsel thought may be biased based on relationships to law enforcement. <u>Id.</u> at 104-06. The Supreme Court determined that disclosure of such a "close relationship" by the juror to the victim warranted further inquiry by the judge on the issue of for-cause dismissal if counsel did not request it. <u>Id.</u> at 105. The relationship here is not between a juror and a victim, whose experience is factually at the core of a criminal trial. Here, the corrections officer would not be a fact witness and, unlike a crime victim, is not a focus of the trial. Further, there are no issues here concerning the exhaustion of peremptory challenges.

A-0743-19